384 So.2d 351 (1980)
STATE of Louisiana
v.
Carter DOZE.
No. 66210.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied June 23, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Walter L. Smith, Jr., Asst. Attys. Gen., for plaintiff-appellee.
William L. Lowe, Shreveport, for defendant-appellant.
*352 DIXON, Chief Justice.[*]
Defendant Doze was charged with second degree murder, found guilty of manslaughter by a unanimous jury and sentenced to eighteen years at hard labor. The one error assigned on appeal concerns the admission, over objection by the defense, of the testimony of the victim's neighbor about a conversation which took place between the two women a few hours before the homicide.
On the evening of December 24, 1977, a man called the Shreveport Police Department to report that he had just killed his landlady. When the police arrived at the address supplied by the caller they found Carter Doze awaiting them on the porch of the residence. Doze stated that he had made the phone call to the police and, with regard to the killing, he explained that "it was either her or me. I had to do it." Doze led the police to the body of his landlady where it lay inside the house, the victim of multiple knife wounds.
Because Doze had admitted killing the victim, both in his initial statement to the police and in a subsequent recorded statement, the only issue for the jury was whether the killing was a justifiable homicide, that Doze struggled with the victim after she came at him with a knife, finally got control of the weapon, and stabbed her in an attempt to protect himself.
The testimony of a member of the coroner's office showed that the victim received seventeen knife wounds. Two of these were stab wounds sufficient to cause her death; the remaining wounds were superficial cuts on her left hand and others generally clustered about the left side of her head, face and neck. In response to questioning by the defense, the same expert medical witness agreed that most of these wounds could have been inflicted as Doze struggled to bend the victim's right hand, holding the knife, away from himself and back toward her body. A broken piece of the knife blade was found lying near the body; the handle and the rest of the blade were found in the adjoining kitchen. The defendant's right hand had suffered several superficial cuts during the incident.
Other testimonyand the jury's own observationsshowed that the defendant was a very heavyset man, about 6' 4" tall, and blind in one eye. The victim was 5' 3" tall, weighing about 140 pounds, seventy-four years of age but having the physical appearance of a woman of fifty. Doze had told the police that he had been having some problems with his landladydisagreements over the amount of his rent. Items of clothing apparently belonging to the defendant were found on the steps leading from the back porch of the residence and on the ground nearby, as if they had been thrown from the back door.
In the testimony complained of, a neighbor recounted the conversation she had with the victim across their back fence on the afternoon of the homicide:
"Q And did she say anything to you about the defendant at that time?
A Yes, sir, she did.
Q In general terms, what did she say, to the best of your memory?
A She told me she wanted to get that man out of her house.
Q Did she say why?
A Yes, sir, she did.
Q And why?
A She said that he had come in drunk and he had fallen over the table and broke her punch bowl, and he was using the bathroom in the bed.
Q Did youand you left your residence at that time?
A I did, sir.
Q And I guess was the last time you saw her?
A That was."
The defense contends that this witness' testimony, purporting to recount what the victim told her, is inadmissible hearsay. It also contends that the defendant was prejudiced *353 by the trial court's error in admitting this testimony, because it tended to rebut the self-defense theory by providing a motive for a homicidal attack by Doze. The state counters by arguing that the portion of the testimony which concerned defendant's unsavory behavior was not hearsay at all, because it was not introduced in order to prove that in fact he had so conducted himself;[1] and that the remainder of the testimony was admissible under the exception to the hearsay rule which permits the introduction of statements manifesting the declarant's state of mind.
In State v. Sheppard, 371 So.2d 1135, 1142 (La.1979), we provided the following succinct definition and characterization of hearsay evidence:
"Hearsay is an out of court assertion introduced to prove the truth of its content. State v. Weedon, 342 So.2d 642 (La.1977). Hearsay is generally inadmissible because of its historic unreliability and because of the unfairness to the defendant who cannot test the truth of the statement. State v. Thompson, 331 So.2d 848 (La.1976). ..."
In the testimony at issue here, the victim's statement constituted an out of court assertion of her state of mind, that is, her intention to evict the defendant, and was hearsay. C. McCormack, Evidence, § 249 (Cleary ed. 1972). However, declarations of mental state are generally admissible, as an exception to the hearsay rule, if introduced to prove the state of mind of the declarant, when that state of mind is at issue. State v. Sheppard, supra.[2] Here, however, the state of mind of the declarant was not at issue. What was at issue, instead, was the state of mind of the defendant, said the prosecutor in arguing the issue, to prove that Doze had a motive for the killing.
The state of mind of the victim is relevant to the existence of a motive for the killing only if two further inferences are made from the initial inference that the victim did intend to evict the defendant. The first of these additional inferences is that the victim actually transformed her intention into action, that she took some affirmative steps to "get that man out of her house." Declarations of state of mind are usually admissible for the purpose of proving that the intention of the declarant was actually carried out. McCormack, supra, § 295. The inference that the victim acted on her declared intention is probably supported by evidence tending to show that she threw the defendant's clothing out of the house. The final and crucial inference which must be made is that the victim communicated her intention to the defendant and that the defendant reacted to this communication. Only if her intention to evict defendant were known to the defendant himself, would it have any relevance to his subsequent conduct. There is no evidence whatsoever that would tend to support this inference, but there is a real danger that a jury might interpret the fact to be proved (that the defendant attacked his landlady) as evidence of the fact to be inferred from the hearsay testimony (that his landlady ordered him to leave the premises).
Two recent cases involving the state's use of hearsay evidence to prove motive have presented us with similar situations. In State v. Weedon, 342 So.2d 642, 647 (La.1977), testimony about the victim's *354 declarations of her intention to leave her husband was introduced to prove that her husband had a motive for killing her. In finding that this evidence was inadmissible, we made the following statement:
"Accordingly, we find that this third . . declaration also is inadmissible. In effect, its introduction attempted to prove a motive for the killing, by hearsay inadmissible for that purpose: That the defendant killed his wife Sunday because she intended to leave him that morning. Admission of hearsay for such purpose is not permitted, because of its historic unreliability.
Since the hearsay was far more probative of motive, prohibited by our jurisprudence, than of the wife's state of mind (assuming the latter, uncommunicated to her husband, to be relevant, cf. 32 La.L. Rev. 355), its prejudicial effect far outweighed its probative value as to the wife's state of mind or intention. The declaration is thus inadmissible on that ground also, insofar as offered to prove the wife's state of mind. Pugh, Louisiana Evidence Law 418-20 (1974)."
In State v. Johnson, 381 So.2d 436 (La. 1980), a friend of the victim was permitted to testify that she had told the victim how happy she was that the victim was planning to return to her husband. This testimony implied not only that the victim had declared to the witness her intention to abandon her boyfriend for her husband, but also that the victim subsequently communicated this intention to her boyfriend, providing him with a motive for the killing. Again, we found that the evidence was inadmissible. Weedon and Johnson differed from the instant case in that the defendants in those cases denied killing the victims. Here, Doze admitted the killing but claimed that it was justifiable because done in selfdefense. The fundamental issue in both situations is that of motive, however, and hearsay evidence of a victim's declaration of intention may not be introduced to prove a defendant's motive, when there is no evidence to show that the victim's intention was actually communicated to the defendant.
Although it was error to admit this testimony, such error warrants reversal only if it probably resulted in a miscarriage of justice, was prejudicial to the substantial rights of the accused, or constituted a substantial violation of a constitutional or statutory right. C.Cr.P. 921. Admission of this testimony could have been prejudicial to defendant only if it led the jury to reject his justifiable homicide defense solely because the evidence was inconsistent with that defense. Actually, however, an inference that the victim tried to evict Doze would have been quite consistent with his self-defense theory: the jury could have found that her animus toward her lodger, coupled perhaps with his reluctance to leave, caused her to attack him with a kitchen knife in an attempt at self-help. In fact, without this evidence of the victim's angry state of mind and antagonistic intention, it might have been more difficult for the jury to believe in an initial attack by a small, elderly woman upon a much bigger and younger man. The jury could well have found that even though the confrontation began with an attack upon the defendant, the ensuing homicide was not justifiable because the defendant could not reasonably have believed, in light of these differences in size and strength, that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from that danger. R.S. 14:20(1). If, on the other hand, the jury rejected the self-defense theory from the onset, it is very possible that it did so because of the disparity in the physical strength of the protagonists, not because of the evidence of motive. We therefore cannot find that the defendant was prejudiced by the erroneous admission of this testimony.
For the reasons assigned, the conviction and sentence of defendant are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
*355 The majority treats the admission of the victim's statements merely as evidence of her intention to evict the defendant, concludes that the statements were inadmissible hearsay evidence, but finds this error harmless in view of the defendant's self-defense argument. This ignores the crux of the evidence presented here, which is not the victim's declaration that she intended to evict the defendant, but rather, her alleged reasons for wanting to do so. The state's witness was permitted to state that the victim told her the defendant "had come in drunk and ... had fallen over the table and broke the punch bowl, and .. was using the bathroom in the bed." Whatever the merits of the declaration of intention to evict the defendant, these further elicited answers regarding the victim's reasons exceeded the scope of the "state of mind" exception to the hearsay rule.
As we pointed out in State v. Weedon, 342 So.2d 642 (La.1977), evidence to prove the existing state of mind of the declarant, if relevant to show that the defendant acted upon this state of mind, "includes within its scope such declarations to do an act, introduced to prove that the declarant subsequently did the act" (emphasis is added). Weedon, at 646; McCormick On Evidence § 295 (2d ed. 1972). The introduction of the victim's statements that the defendant broke her punch bowl and went to the bathroom on her bed went beyond the scope of the state of mind exception as put forward by Weedon. These statements were hearsay"testimony in court, or written evidence of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." State v. Martin, 356 So.2d 1370, 1373 (La. 1978). Coming within none of the recognized exceptions to the hearsay rule, the evidence was inadmissible in this trial.
The admission of the evidence that the defendant committed unsavory acts against the victim was not harmless. The jury was permitted to infer from this inadmissible evidence that the defendant was a bad character, clearly a prejudicial consideration.
NOTES
[*] Honorable RICHARD H. GAUTHIER, Judge, Thirty-fourth Judicial District, participated in this decision as an Associate Justice Ad Hoc.
[1] If not introduced for this purpose, this portion of the testimony was inadmissible as evidence of prior bad acts or as opinion evidence of character. Even when introduced to rebut a defendant's proof of good character, which was not the case here, both types of character evidence are inadmissible. R.S. 15:479-483.
[2] In Sheppard, hearsay evidence concerning a statement by the victim was admissible to show that he had no intention to attack the defendant, thus rebutting the defendant's theory of self-defense. The state of mind of the declarant, the victim, was at issue because the defense was attempting to prove that the victim was the aggressor, and this evidence was introduced by the state to contradict that allegation. In the instant case, the defense also alleged that the victim was the aggressor. But the state introduced the hearsay evidence to show that the defendant had a motive for attacking the victim, not to show that the victim had no intention of attacking the defendant. The victim's state of mind was not at issue.