561 So.2d 76 (1990)
Vera BUCKBEE, Individually and as the Administratrix of the succession of William Buckbee, and on behalf of the minor, Larry Dean Buckbee
v.
UNITED GAS PIPE LINE COMPANY INC.
Nos. 89-C-1324, 89-C-1344.
Supreme Court of Louisiana.
April 30, 1990.
*77 William Baggett, Jr., Baggett, McCall & Burgess, Michael Garber, Drew Ranier, Badon & Ranier, Lake Charles, for applicant in No. 89-C-1324.
Robert Clements, Stockwell, Sievert, Viccellio, Clements & Shaddock, Bret Barham, Lake Charles, James Shelton, Pugh & Boudreaux, Lafayette, Christopher Fruge, Fruge & Vidrine, Ville Platte, for respondent in No. 89-C-1324.
Christopher Fruge, Fruge & Vidrine, Ville Platte, for applicant in No. 89-C-1344.
William Baggett, Jr., Baggett, McCall & Burgess, Michael Garber, Drew Ranier, Badon *78 & Ranier, Robert Clements, Stockwell, Sievert, Viccellio, Clements & Shaddock, Bret Barham, Lake Charles, James Shelton, Pugh & Boudreaux, Lafayette, for respondent in No. 89-C-1344.
CALOGERO, Chief Justice[*].
The jury concluded that William Buckbee was contributorily negligent regarding an explosion and fire at the Lake Charles Refining Co. ("LCR") on January 15, 1980, which resulted in his death. We granted writs to entertain the contentions of Buckbee's wife and children, plaintiffs, that the trial court committed reversible error to their prejudice in several evidentiary rulings.
Buckbee was employed as the maintenance foreman for LCR. He was assigned the job of reassembling and installing a second-hand box heater previously owned by United Gas Pipe Line Company Inc. ("United Gas").[1] In the process of readying the heater for service, Buckbee and a co-employee, Roosevelt Vincent, attempted to remove a tapered metal plug protruding from a mule-ear header on the exterior of the heater.[2] After two hours of work with wrenches and sledge hammers, they found themselves unable to remove the plug. Buckbee then left the scaffold where he and Vincent were working, went into the plant office, remained there for about ten minutes, returned, and remounted the scaffold. At that point, Buckbee and Vincent used an acetylene torch in an effort to loosen the plug. Although the heater had been out of service for several years, and although it had been "cleaned," dismantled, and transported from Texas to Louisiana, the tube behind the plug apparently contained some volatile flammable matter. Application of the acetylene torch to the plug and surrounding heater surface caused a fire to erupt, coincident with expulsion of the plug. The fire burned both Buckbee and Vincent severely. Vincent recovered; Buckbee died three weeks later from his injuries.
Buckbee's surviving wife and child sued United Gas, among others, alleging that United Gas negligently failed to inspect, test, and clean the heater before selling it to the Jerry R. Watt Co., and failed to warn LCR of the dangerous condition of the heater. Upon motion by United Gas, the trial court consolidated the Buckbee plaintiffs' suit with a suit filed by Roosevelt Vincent.
At trial, the jury heard evidence that United Gas had used in the heater a kerosene-like substance called "absorbing oil" and that a sample of a kerosene-like liquid was taken from the tube shortly after the explosion. Apparently it was the absorbing oil which fueled the explosion and fire. The jury also heard evidence that the contract between United Gas and the first purchaser, the Jerry R. Watt Co., required United Gas to provide an inspector to "assist in monitoring" the dismantling of the heaters at United Gas's site. The jury concluded that United Gas's negligence was a proximate cause of the accident.
The jury also heard testimony from Buckbee's superiors, plant co-owner Joseph Chamberlin and plant superintendent Blane *79 Sheley, that the accepted safe practice was to remove the first plug from this type of heater "cold," that is, through use of chisels, hammers, and wrenches, just as Buckbee and Vincent first tried. The jury heard evidence that Buckbee, who had worked in refineries for at least ten years, was aware of this safety procedure. Over plaintiffs' hearsay objection, the trial court permitted Chamberlin to testify that he instructed Buckbee "probably a month before and probably a day before" the accident that the first plug should always be removed cold. The trial court permitted Sheley to testify that on the evening before the accident he and Buckbee discussed the procedure for removing the first plug cold with a third employee, a trainee who was not later involved in the accident.
Contrariwise, the jury was not permitted to hear plaintiffs' evidence which indicated that on the morning of the accident Buckbee had sought and secured his superiors' permission to use heat just before he applied heat to the plug. The trial court refused to permit Roosevelt Vincent to testify about two oral statements which Buckbee allegedly made just before the accident, statements which indicated that Buckbee had (1) sought permission to apply heat to the plug and (2) secured such permission.
The court permitted Vincent to testify that prior to applying heat Buckbee descended the scaffold on which they were working, entered the plant office, remained there for approximately ten minutes, returned and remounted the scaffold. The court also permitted Vincent to testify that after receiving instructions from Buckbee he and Buckbee then, in turn, applied heat to the plug with an acetylene torch. However, the court did not permit Vincent to testify about what Buckbee told him just before descending and just after reascending the scaffold. Plaintiffs proffered Vincent's testimony in the form of a stipulation of the parties:
[I]f Mr. Vincent were called as a witness and asked what was his understanding of why Mr. Buckbee left to go to the office, it would be to obtain permission to apply heat to the plug to remove it. Secondly, that if he were asked to testify as to what Mr. Buckbee said before he went to the office, he would say that he was going to get permission to apply heat, and that when he came back he said that he had obtained permission and they could go ahead and apply the heat.
The jury found that Buckbee's negligence was a proximate cause of the accident, precluding any recovery by Buckbee's surviving spouse and child.[3] By contrast, the jury found no negligence on the part of Vincent and awarded him $750,880.00 in damages. Buckbee's widow and child appealed, arguing that the trial court erred in excluding Vincent's testimony and that such exclusion constituted reversible error. The court of appeal affirmed, concluding that the evidence was not admissible, both because it constituted "double hearsay" and because it did not form part of the res gestae of the incident. 542 So.2d 81 (1989). Additionally, the court of appeal concluded that, "[i]f the trial court erred in disallowing Vincent's testimony as to the hearsay statements," it was harmless error.
We reverse the court of appeal judgment and remand the case to that court for renewed consideration.
Our focus in this opinion is on the lower courts' evidentiary rulingsfirst, the courts' admitting Chamberlin's and Sheley's testimony regarding statements they presumably had made to Buckbee regarding the proper method for removing the plug; second, the courts' excluding Vincent's testimony regarding Buckbee's two pre-accident oral statements to him. In each instance, the issue before this Court is whether the testimony is hearsay under the definition of hearsay adopted by this Court, and therefore inadmissible; whether the testimony is, by definition, nonhearsay and therefore admissible; or whether the testimony, even though hearsay, is admissible under an exception to the hearsay rule.
*80 In proceeding to answer these inquiries, we look first to the definition of hearsay embraced by this Court in State v. Martin, 356 So.2d 1370, 1373-74 (La.1978) (quoting McCormick, Evidence § 246 (Cleary ed. 1972)):
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.[4]
In its broadest sweep, the hearsay rule excludes all testimony regarding statements made out-of-court by declarants who at the time of making the statements were not under oath, not in the presence of the trier of fact, and thus not subject to cross-examination. By excluding testimony which fails these three requirements, the hearsay rule increases the reliability of in-court testimony, and seeks to admit only that testimony which the factfinder can evaluate for the witness's perception, memory, narration and sincerity. 4 J. Weinstein & M. Berger, Weinstein's Evidence 800-1 to 800-5 (1988).
The hearsay rule, however, does not bar testimony not properly defined as hearsay, needless to say. When testimony concerning an out-of-court statement is not "offered as an assertion to show the truth of the matters asserted therein," see Martin, supra, such testimony is, by definition, not hearsay. 4 J. Weinstein & M. Berger, Weinstein's Evidence § 801(c)(01) (1988). See also State v. Jones, 558 So.2d 546 (La.1990); C. McCormick, McCormick on Evidence § 249 (W. Cleary 3d ed. 1984) (hereinafter McCormick on Evidence). Such testimony may therefore be admissible if it otherwise meets the requirements of relevancy and materiality, and overcomes the risk of undue prejudice. G. Pugh, Louisiana Evidence Law 418 (1974); see La.R.S. 15:442, repealed by Acts 1988, No. 515 (effective Jan. 1, 1989).
An out-of-court statement may be admissible as nonhearsay in the following instances, among others: (1) to prove that the out-of-court statement was made, rather than to prove the truth of the fact or facts asserted in the statement;[5] (2) to illustrate the impact and consequent effect that the out-of-court statement had upon the state of mind of the listener or to illustrate the state of mind of the speaker;[6] and (3) to prove the occurrence of a "verbal act" to which the law attaches duties and liabilities. McCormick on Evidence § 249.[7]
*81 Chamberlin's and Sheley's testimony to out-of-court statements made by them was, by definition, not hearsay. This testimony was not offered to prove the truth of the matters asserted in the out-of-court statements, that it was only safe to remove the first plug cold. Rather, Chamberlin's and Sheley's testimony to their out-of-court statements was offered as evidence that Buckbee had received cautionary advice instructing him in the safe procedure for removing this plug. Their testimony was offered as evidence of Buckbee's mental state, i.e., that he had notice, knowledge, and information concerning the industry's accepted safe method for removing a first plug from this type of equipment, and that he was advised by experienced individuals to follow that procedure. Chamberlin's and Sheley's testimony was offered for this nonhearsay purpose and, for this reason, was properly admitted by the lower courts. This testimony was relevant to the central legal issue in the case: whether Buckbee acted negligently when he applied heat to the plug.
Plaintiffs urge that Vincent's testimony concerning Buckbee's second statement, that he had received permission to apply heat, is also admissible as nonhearsay evidence of Buckbee's state of mind, that is, as evidence that Buckbee might reasonably have concluded that it was safe to heat the plug. We do not find that Buckbee's second statement is admissible for the nonhearsay purpose suggested by plaintiffs, for these reasons. To admit Vincent's testimony to Buckbee's second statement as evidence that (1) Buckbee reasonably concluded that it was safe to heat the plug, and that (2) Buckbee acted reasonably and not negligently when he applied heat to the plug, one must first assume the truth of the underlying hypothesis, i.e., that Buckbee did in fact receive a favorable response from his superiors to his request for permission to apply heat. Unless that underlying assertion is true, that Buckbee received the sought-after permission, Buckbee's second statement has no credible relevance to the issue of whether Buckbee was reasonable in concluding that it was safe to heat the plug.
Plaintiffs cannot be permitted to rely on the nonhearsay use of this statement to prove the effect upon Buckbee, the listener, of an expression of permission which is contested and not otherwise proven. Whether Buckbee acted reasonably in concluding that it was safe to apply heat depends, at least in part, upon whether he reached this conclusion in consequence of receiving his superiors' permission. And the only proof of whether Buckbee received permission is Buckbee's own statement to that effect, presented through the testimony of Vincent. Since Buckbee's statement was made out of court, not under oath, and not subject to cross-examination, Vincent's testimony to that statement is hearsay when offered to prove that Buckbee in fact received permission to apply heat[8] and would not be admitted in this instance solely for a nonhearsay purpose. The lower courts properly excluded this testimony.
Plaintiffs also urge that, even if Vincent's testimony to Buckbee's second statement is hearsay, it should be admitted under a jurisprudential exception to the hearsay rule. This Court, in the search for truth, recognizes exceptions to the hearsay rule when there exist both sufficient guarantees *82 of trustworthiness and a necessity for the evidence. State v. Smith, 285 So.2d 240, 243 (La.1973).[9] Plaintiffs urge the Court to rule that Vincent's testimony to Buckbee's second statement is admissible under a broad residual exception to the hearsay rule equivalent to that permitted by L.C.E. art. 804(B)(6) and Fed.R.Evid. 804(b)(5).[10] Both the federal rule and the Louisiana code article reflect concerns articulated by this Court in State v. Smith, supra, that the hearsay possess circumstantial guarantees of trustworthiness and that a necessity exist for its introduction in a particular case.[11]
Although the instant case is not governed by the L.C.E., we find that L.C.E. art. 806(B)(6) provides the appropriate standardtrustworthiness and necessityby which to judge the admissibility of the hearsay evidence at issue here. In this case, Vincent's testimony to Buckbee's statement, that he had received permission to apply heat, is the only available evidence (except for Vincent's testimony to Buckbee's first statement) which supports plaintiffs' version of events in this case. Plaintiffs have been unable to adduce any other evidence countering Chamberlin's and Sheley's testimony that Buckbee disobeyed instructions and acted hastily and incautiously in his effort to remove the plug, but rather that he in fact got permission. Vincent's testimony therefore meets the necessity requirement of the residual hearsay exception.
However, Vincent's testimony regarding Buckbee's second "permission" statement lacks circumstantial guarantees of trustworthiness which would overcome the hearsay bar posed by Buckbee's unavailability to testify in court under oath and subject to cross-examination. Admittedly, there is one item of evidence which could be interpreted as circumstantial support for Buckbee's declaration that he had received permission: the fact that he descended the scaffold, entered the plant office, and remained there for ten minutes. This fact alone, however, is insufficient to offset the other equally plausible explanation for Buckbee's statement, i.e., the possibility that Buckbee was unable to procure assent to his request for permission to apply heat, or that his request was denied and he chose in either event to proceed with what he perceived as the thing to do while conveniently misleading Vincent by telling him that he had obtained permission to proceed with heat. The court cannot test, and the jury cannot evaluate, the trustworthiness of this statement by placing Buckbee on the witness stand under oath and subject to cross-examination. In his absence, the statement is inadmissible for the reason that the circumstantial guarantees of the statement's reliability are insufficient. On the admittedly limited evidence presented, the trustworthiness of Buckbee's "permission" statement is not preponderately shown. *83 Our conclusion here is of course different from State v. Gremillion, 542 So.2d 1074 (La.1989), where, guided by the residual hearsay exception standard in L.C.E. art. 804(B)(6), we found that a decedent's statement, although hearsay, was admissible. In Gremillion, we found that the statement was corroborated by other evidence which rendered it reliable and trustworthy. The defendant in Gremillion was accused of beating a man who later died of internal injuries. After being admitted to a hospital, the victim stated to an investigating officer that he had been attacked by three white males. In a separate statement, made part of the hospital record and admitted at trial, the victim told the admitting physician that he was kicked and beaten by "several others." The victim was otherwise unable to identify his attackers. The Court found that several factors rendered the victim's statement to the investigating officer reliable and trustworthy: first, it was made to an officer investigating the crime; second, an equivalent statement was made to the admitting physician; and third, the decedent failed to identify the defendant as his attacker although he had known the defendant for approximately eleven years.[12]
Unlike the hearsay statement in Gremillion, Buckbee's second statement lacks similarly persuasive other corroborative evidence and is therefore not admissible under the residual hearsay exception urged by plaintiffs.
Plaintiffs have also suggested that Buckbee's second statement to Vincent may be admissible as part of the res gestae of the incident or under the "present sense impression" exception to the hearsay rule. We reject both of these analyses for the following reasons.
In Louisiana, res gestae was formerly defined and rendered admissible by statute. La.R.S. 15:447-448 (repealed by Acts 1988, No. 515 (effective Jan. 1, 1989)).[13] Although Louisiana's statutory definition of res gestae was narrowly drawn, the exception often received expansive treatment in the courts. See, e.g., State v. Washington, 444 So.2d 320, 324 (La.App. 1st Cir. 1983). Nevertheless, the res gestae exception was more properly limited to "spontaneous words or acts of the participants at the time of the occurrence" rather than a participant's narration of events. State v. Williams, 331 So.2d 467, 470 (La.1976). As the Williams Court explained, "(t)he res gestae exception permits admission of events speaking through participants, but *84 not the testimony of participants speaking about events." Williams, 331 So.2d at 470.[14]
In the instant case, Buckbee's statement was made narratively, upon his return from the plant office. He recounted an event which had purportedly transpired. It is not rendered admissible under the res gestae exception by the mere fact that it was made during what, in retrospect, appears a continuing sequence of events leading up to the fatal accident.
Nor is this statement admissible under the exception for a "present sense impression," an exception now codified at L.C.E. art. 803(1). As McCormick explains, a present sense impression is "confined to `describing or explaining'"an event or condition perceived by the speaker. McCormick On Evidence § 298. The critical factor is whether the statement was made while the individual was "perceiving" the event or "immediately thereafter." L.C.E. art. 803(1); McCormick on Evidence § 298. The statement may follow "immediately" after perceiving an event, allowing only for "the time needed for translating observation into speech." McCormick on Evidence § 298.
In this case, Buckbee's statement did not "immediately" follow his "perception" of an event. Rather, Buckbee's statement was sufficiently distant from events which may have taken place in the plant office to rule out admitting it as Buckbee's present sense impression of those purported events. Consequently, Buckbee's second statement to Vincent fails to meet the requirements of the present sense exception to the hearsay rule and was properly excluded by the lower courts. We turn now to the admissibility of Buckbee's first statement, which Buckbee made to Vincent before descending the scaffold, that he intended to seek permission to heat the plug.
One well-recognized exception to the hearsay rule admits testimony concerning a speaker's out-of-court declaration of intent. State v. Doze, 384 So.2d 351, 353 (La.1980) (citing McCormick, Evidence § 249 (Cleary ed. 1972)). Although such a statement is hearsay when offered to prove the truth of the matter asserted therein, i.e., that the declarant actually intended to take, and did subsequently take, certain action, such a statement is nonetheless excepted from the bar of the hearsay rule. This exception is now codified at L.C.E. art. 803(3), which provides, in pertinent part, that a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)," is admissible as an exception to the hearsay rule when that statement is "offered to prove the declarant's then existing condition or his future action."[15] *85 In this case, Vincent's testimony to Buckbee's first statement, that he intended to seek permission to apply heat to the plug, a statement which Buckbee made just before descending the scaffold and going into the plant office, falls squarely under this exception to the hearsay rule. It is hearsay and it is nevertheless admissible to show the declarant Buckbee's state of mind, i.e., his intent to seek permission.
This testimony is not only evidence that Buckbee formulated the intention to seek his superiors' permission to apply heat. It could also be offered as some evidence that Buckbee did indeed act in accordance with his expressed intention, that he did approach his superiors in the moments before the accident and that he did request of them permission to apply heat.[16] Coupled with Vincent's testimony that Buckbee thereupon descended the scaffold, and Vincent's testimony that he watched Buckbee walk to, enter, and remain in the plant office for about ten minutes, the testimony regarding what Buckbee said just before descending the scaffold is powerful circumstantial proof that Buckbee in fact sought his superiors' permission to apply heat.
Vincent's testimony concerning this statement was admissible as an exception to the hearsay rule and the lower courts erred in excluding this statement. Moreover, because this testimony is relevant to the issue of Buckbee's negligence, its exclusion was not harmless error but was decidedly prejudicial to plaintiffs' case. It probably explains why the jury found Buckbee contributorily negligent and without the right to recover damages while allowing Vincent, Buckbee's co-employee, to recover.
Error has been defined as harmless when it is "trivial, formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case." 5 Am.Jur.2d, Appeal and Error § 776 (1962) (citing State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341, 344 (1947)); Eastburn v. Ford Motor Co., 471 F.2d 21, 22-23 (5th Cir.1972) (applying Florida law). By contrast, prejudicial error "affects the final result of the case and works adversely to a substantial right of the party assigning it." 5 Am.Jur.2d, Appeal and Error§ 776 (1962); see also 5A C.J.S. § 1676 (1958). Moreover, error is prejudicial when it consists of the exclusion of evidence related to a "material point in issue" and adversely affects the substantial rights of the party opposed to the exclusion. 5 Am.Jur.2d, Appeal and Error § 776 (1962).
That Buckbee sought permission to apply heat is directly relevant to whether he was contributorily negligent, the most central and significant issue in this case. In earlier cases we have explained that a plaintiff's contributory negligence is a relative, not an absolute, determination. Contributory negligence must be judged objectively in each particular case according to the conduct expected of a reasonable man under like circumstances. Soileau v. South Central Bell Tele. Co., 406 So.2d 182 (La. 1981); Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979); Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976); Theunissen v. Guidry, 244 La. 631, 153 So.2d 869 (1963). Moreover, a party is only required to use reasonable caution, and his conduct is not negligent if, "by a common sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances." Dupas v. City of New Orleans, 354 So.2d 1311, 1313 (La. 1978) (quoting Smolinski v. Taulli, 276 So.2d 286, 290 (La.1973)).
*86 In this case, the excluded testimony may have significantly influenced the jury's conclusion concerning whether Buckbee acted reasonably, or negligently, under the circumstances. The jury found Buckbee contributorily negligent after hearing only a patently unfair and one-sided version of events leading up to the accident. Chamberlin and Sheley were permitted to testify that they had advised Buckbee to attempt to remove the plug "cold;" their testimony tended to prove that Buckbee acted in contravention of direct advice in applying heat to the plug. From his grave, Buckbee was unable to confirm or deny these allegations. Vincent's testimony tended to prove that Buckbee did not ignore direct advice but rather, after strenuous but unsuccessful efforts to remove the plug cold, sought out his superiors' permission to use heat on a heater which presumably had been "cleaned," which certainly had been dismantled, which had sat idle for over two years, and which showed signs of having been previously cut with torches. Had this evidence been admitted, the jury might have concluded that Buckbee exercised the care of a reasonable, prudent man under like circumstances. Moreover, because Vincent's testimony casts at least a shadow of doubt on the credibility of Chamberlin and Sheley, Vincent's testimony may have enabled the jury to reasonably conclude that Buckbee not only requested permission from his superiors to apply heat but that he possibly received their assent and concurrence.
Vincent's testimony to Buckbee's first statement is also relevant for its tendency to demonstrate Buckbee's attitude toward safety, another factor in assessing whether Buckbee acted negligently. This testimony counterbalances Chamberlin's testimony, disputed by plaintiffs, that Buckbee sometimes acted rashly. While Chamberlin's testimony may have led the jury to conclude that Buckbee acted without due caution or that he reached hasty, imprudent decisions, including the decision to use heat on the plug, the jury could, by contrast, conceivably have formulated a different conclusion upon hearing Vincent's testimony that Buckbee went about seeking the advice and permission of his superiors before heating the plug. Had the jury been permitted to hear Vincent's testimony to this statement of Buckbee's, the jury could reasonably have concluded that Buckbee was a thoughtful, careful, and conscientious employee, a person who respected the hazards of an industrial workplace.
In summary, the lower courts correctly admitted Chamberlin's and Sheley's testimony concerning the advice they gave Buckbee. The courts correctly excluded Vincent's testimony concerning Buckbee's second statement, that he had obtained permission to apply heat. However, the courts erred in excluding Vincent's testimony concerning Buckbee's first statement, that he was going to seek permission to heat the plug. Moreover, because this error may have affected the jury's conclusion on the central issue of Buckbee's contributory negligence, the court of appeal erred in concluding that the exclusion of this evidence constituted harmless error.[17] We therefore reverse the lower courts' decision and remand for the court of appeal to conduct a de novo review of the record and render judgment on the merits, all in accordance with Gonzales v. Xerox, 320 So.2d 163 (La.1975).
When the jury's verdict is tainted by a trial court's erroneous exclusion of evidence, that verdict is not entitled to the appellate court's deference under a clearly wrong or manifestly erroneous standard. McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). Rather, the jury verdict must be *87 set aside and, under the authority granted in Louisiana Constitution Art. V, § 10(B), the appellate court must make an independent review of the record and decide the case on the merits, giving no weight to the jury's conclusions. Id.; Gonzales v. Xerox, supra.
In this case, the jury's verdict is based upon an error of law which goes to the central legal issue in the case. That verdict cannot stand. The court of appeal must disregard the jury's conclusions and review the record with a fresh eye. In this instance, the court of appeal's review was something other than the independent nondeferential review of the record to which plaintiffs are entitled under our constitution and jurisprudence. By putting aside the issue of whether Buckbee received permission to apply heat, and by seeking alternative grounds to support the jury's verdict, the court of appeal assigned some weight and importance to that verdict. Hence, plaintiffs were denied the appellate review which meets the dictates of Gonzales v. Xerox.
Although this Court, like the court of appeal, has appellate jurisdiction of both law and fact and may perform an independent review and render judgment on the merits, see La. Const. art. V, § 5(C) and Thomas v. Missoui Pacific R.R. Co., 466 So.2d 1280 (La.1985), we prefer that the court of appeal perform the first appellate review of the entire record under the correct rule of law. Several considerations prompt our conclusion that the court of appeal is the appropriate body to do this. First, the appellate court has the primary responsibility for reviewing the trial court's factual determinations. Second, the proper allocation of functions between the lower appellate courts and the Supreme Court is best served by consigning the first appellate review to the court of appeal and preserving to this Court discretionary review upon the litigant's petition for certiorari. See Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973) (the preservation of the proper allocation of functions between trial and appellate courts is one reason the appellate courts adhere to the manifest error standard of review).

DECREE
For the foregoing reasons, we reverse the judgment of the court of appeal and remand the case to the court of appeal for a reconsideration of plaintiff's appeal consistent with the principles of appellate review set forth in this opinion.
REVERSED; REMANDED TO THE COURT OF APPEAL.
WATSON, J., concurs in part and dissents in part, assigning reasons.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
DIXON, Retired Justice, concurs in part and dissents in part believing that both excluded statements were admissible and that the parties are entitled to a new trial for a jury to decide the factual issues.
WATSON, Justice, concurs in part and dissents in part:
While I concur in the remand, I dissent from the holding that Buckbee's second statement was inadmissible.
Hearsay is inadmissible because it is unreliable evidence. Exceptions to the hearsay rule allow hearsay evidence when there are indicia that the evidence is reliable.
Just prior to the fatal accident, Buckbee went to the office, returned and said that he had obtained permission to apply heat to the plug. The statement was admissible under the "present sense impression" exception to the hearsay rule, which allows a contemporaneous explanatory statement. Such a statement is reliable because it is not colored by the need to conform it to later events. In my view Buckbee had no reason whatever to misrepresent the fact that he had been given permission to use heat. In addition, the statement is admissible as a declaration of Buckbee's state of mind; it shows why Buckbee performed the task causing his fatal accident in the way he did. The fact that the statement related to a critical issue of fact, whether Buckbee was guilty of contributory negligence, does not render it inadmissible.
I respectfully concur in the opinion except that I dissent from disallowing Buckbee's second statement. *88 LEMMON, Justice, subscribing to the opinion and assigning additional reasons.
I subscribe to the opinion of the majority holding that the trial court's exclusion of plaintiff's evidence on hearsay grounds was prejudicial error which requires reversal of the judgment. I have some doubts, however, about the propriety of having the court of appeal decide this case on the record under its constitutional authority to review facts in civil cases in accordance with Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Although the record is arguably complete (the primary requirement of Gonzales) because of the stipulation by the parties as to the excluded testimony by Vincent, the plaintiff will not have the opportunity on remand to fully develop Vincent's testimony on the issue. Perhaps even more significantly, United Gas will not have the opportunity to cross-examine Vincent on the evidence regarding the statement made to him by Buckbee or to present other evidence rebutting that statement. If the interest of justice dictates, the court of appeal may consider remanding the case to the trial court, either for development of the evidence regarding Buckbee's statement to Vincent in order to complete the record on appeal or for a new trial before another jury. See Ragas v. Argonaut Southwest Insurance Company, 388 So.2d 707 (La.1980).
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case having been a member and Chief Justice of this Court when the case was orally argued and taken under advisement.
[1] The box heater consisted of a steel frame full of firebrick and six-inch steel tubes welded into coils. It weighed approximately 200 tons, and measured forty feet long, fifteen feet wide, and thirty feet high. It was originally used by United Gas at its plant in Carthage, Texas. When United Gas closed its Carthage plant, it sold its equipment, including several box heaters, to the Jerry R. Watt Co., a used equipment dealer. The Watt Co. sold the heaters to LCR. The heaters were dismantled and transported from Carthage to the LCR refinery near Lake Charles, Louisiana. LCR had to reassemble the heaters before placing them in service.
[2] The plug, weighing two to three pounds, and the aperture into which it is placed, provide a means of inspecting the interior of the long pipes or tubes which run the full length of the heater and make a one-hundred and eighty degree return bend at the other end. The plug is placed in a "mule ear header," a metal device weighing between two- and three-hundred pounds which fits over the open ends of the pipes and permits material to flow continuously through the heater. The plug is secured by a shackle which fits into notches on the "mule ears" on either side of the header and can be tightened by a bolt running through its center.
[3] This case arose prior to the adoption of comparative fault, hence a finding that Buckbee was contributorily negligent precludes any recovery by his survivors.
[4] This case commenced prior to the effective date of the Louisiana Code of Evidence with the filing of plaintiff's petition on January 12, 1981. (Acts 1988, No. 515 enacted the L.C.E. and provides that the L.C.E. "shall govern and regulate all civil proceedings commenced ..." on or after the January 1, 1989, effective date of the act). The case is thus governed by pre-Codal statutes and jurisprudence on the admissibility of hearsay testimony. The L.C.E. adopts a definition of hearsay which comports substantially with the definition previously adopted by this Court. The Code defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." L.C.E. art. 801(C).
[5] State v. Naas, 409 So.2d 535, 547 (La.1981); State v. Green, 282 So.2d 461 (La.1973); State v. Cole, 145 La. 900, 83 So. 184 (1919).
[6] Weinstein gives the following examples of the nonhearsay use of statements to show state of mind:

(S)tatements of complaint may be admitted to show that the recipient was on notice that his customers were generally dissatisfied; continued operation despite this knowledge may then be indicative of a scheme to defraud. An accused may proffer statements consistent with good faith on his part to rebut the inference of criminal intent which might otherwise be drawn from his actions. Statements may likewise be proffered in civil cases to show the presence or absence of intent in actions in which intent is in issue.
Statements may also be admitted to show other states of mind such as knowledge, motive, fear, or reasonableness in taking particular action or in reaching a particular conclusion.
4 J. Weinstein & M. Berger, Weinstein's Evidence § 801(c)(01) at 801-78 to 801-80 (1988).
[7] For example, in a suit for defamation, the defaming statement is the "operative fact which gives rise to legal consequences." 4 J. Weinstein & M. Berger, Weinstein's Evidence § 801(c)(01) (1988). See also McCormick on Evidence § 249 n. 4 for citations to cases which hold that specific verbal acts, such as a command, a fraudulent representation, and an agent's testimony to a principal's statement granting him agency authority, are not hearsay.
[8] Had Buckbee survived, he would have been permitted to testify about his superiors' statements permitting him to apply heat as a nonhearsay "verbal act" (a giving of permission by a superior with authority to do so) with concommitant legal consequences. Had Vincent personally heard Buckbee's superiors giving Buckbee permission to apply heat, he too would have been permitted to testify to that statement. However, since Vincent did not personally hear the statement being made, he is not permitted to testify to Buckbee's out-of-court assertion that such a statement occurred. See Knorr v. Pearson, 671 F.2d 1368, 1372-73 (C.C.P.A.1982) (third party's testimony to what he heard first inventor say to second inventor held admissible nonhearsay as proof of a verbal act with legal consequences between the two inventors, but third party forbidden to testify to what the first inventor told him the second inventor said); General Tire of Miami Beach, Inc. v. N.L.R.B., 332 F.2d 58, 60-61 (5th Cir.1964) ("The verbal act, as any other act, may be proved by one who heard it, saw it, or felt it.").
[9] The Louisiana Code of Evidence recognizes twenty-four exceptions to the hearsay rule. L.C.E. art. 803(1)-(24). The Official Comments to L.C.E. art. 803 indicate that the majority of these hearsay exceptions are intended either to codify, clarify, or effect no change in the existing Louisiana law of evidence.
[10] The cited rules apply only when the declarant is unavailable. The L.C.E. permits the admission of hearsay evidence not covered by another specific exception "if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy and the proponent has adduced or attempted to adduce all admissible evidence to establish the fact to which the proffered statement relates...." L.C.E. art. 804(B)(6). Similarly, the federal rule permits the admission of hearsay evidence which is not covered by other recognized hearsay exceptions yet has "equivalent circumstantial guarantees of trustworthiness." When invoking this exception, the court must first determine that the hearsay evidence is material, is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and that the admission of the evidence will serve general purposes of the evidence rules and the "interests of justice." Fed. R.Evid. 804(b)(5). Both rules require that notice be given to the adverse party of the intended use of such hearsay.
[11] The Official Comments to Exception 804(B)(6) note that this exception "permits a court to admit specific out-of-court declarations when justified in doing so by the compelling circumstances of a particular case."
[12] In Robinson v. Shapiro, 646 F.2d 734 (2d Cir.1981), the court found adequate physical evidence to corroborate and render trustworthy a worker's statement made shortly before his death in a fatal work-related accident to a co-employee. The decedent told the co-worker that the building superintendent at the job site had instructed that, to prevent the superintendent's dog from escaping its rooftop kennel, the work crew was forbidden to open a large iron gate in order to reach the garage rooftop work area. Decedent also stated that the superintendent forbade the crew to reach the roof by passing through his apartment because that would soil the carpets. Throughout the day, the workcrew climbed over the gate to reach the work area. At the end of the day, when the decedent was climbing over the gate for the last time, the gate came loose, the decedent fell down the stairs leading to the roof, and the gate fell on top of him. He died three days later from injuries.

The trial court admitted the co-worker's testimony about the decedent's statement and the court of appeals affirmed, holding that the testimony met the requirements of the residual hearsay exception in Fed.R.Evid. 804(b)(5). The statement was corroborated by other physical evidence, giving it "equivalent circumstantial guarantees of trustworthiness:" first, there was evidence that a dog was kept on the roof; and second, the weather on the day of the accident was wet and snowy. Moreover, the evidence was material; it was "more probative on the point for which it (was) offered than any other" reasonably available evidence; and its admission served the best interest of justice. Robinson, 646 F.2d at 742.
The federal courts' decisions provide a source of persuasive authority for the Louisiana courts on this issue. See L.C.E. art. 102 Official Comments (a).
[13] Res gestae was formerly defined by La.R.S. 15:447 as follows:

Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
[14] The res gestae exception predates many recent developments in the theory of hearsay; it served historically to admit words spoken contemporaneously with or directly after the event that formed the subject of the legal action. McCormick On Evidence § 298. Statements formerly admitted under the res gestae exception are now described and rendered admissible by separate specific hearsay exceptions and exemptions in both the L.C.E. and the Federal Rules of Evidence, including an excited utterance; a present sense impression; a statement of then existing mental, emotional, or physical condition; statements made for purposes of receiving medical treatment; and statements offered as nonhearsay proof of something other than the truth of the matter asserted. L.C.E. art. 803(1)(4); L.C.E. art. 801(A)-(C); see Pugh, Force, Rault & Triche,Handbook on Louisiana Evidence Law 293, Authors' Notes to art. 803(1). These specific exceptions reflect the rationale underlying the original res gestae exception: that statements made contemporaneously with an event, without opportunity for reflective thought, possess sufficient guarantees of reliability to overcome the hearsay bar. McCormick on Evidence § 298.
[15] Testimony about a declarant's out-of-court statement of intent is hearsay when offered to prove the truth of the matter asserted, that the declarant did in fact intend to take certain action, and did subsequently take such action. It is nonetheless admissible under this statutory exception to the hearsay rule.

Testimony concerning an out-of-court statement is nonhearsay, and therefore not barred, when used to prove the effect of an out-of court statement on the listener's state of mind. Testimony concerning an out-of-court statement may be admissible as nonhearsay to demonstrate a declarant's state of mind when the testimony is not offered to prove the truth of the matter asserted in the statement. For example, a declarant's statement "I am the king" may be admissible nonhearsay when offered to prove the speaker's mental condition; the statement would be inadmissible hearsay if offered to prove the truth of the assertion, that the speaker is in fact the king.
[16] In State v. Doze, we determined that "(d)eclarations of state of mind are usually admissible for the purpose of proving that the intention of the declarant was actually carried out." 384 So.2d 351, 353 (La.1980) (citing McCormick, Evidence § 295 (Cleary ed. 1972)). This dual evidentiary function of the statement of intent is carried over in L.C.E. art. 803(3), which provides that such a statement may be offered "to prove the declarant's then existing condition or his future action." (Emphasis added).
[17] The court of appeal reasoned that, even if this evidence had been admitted, the jury could have concluded that Buckbee was negligent based on the other evidence in the case, such as Buckbee's years of oil field-related employment, his experience as a welder, his prior experience with heaters of this type, and evidence that Buckbee had been advised that it was not safe to remove a first plug with heat. The court of appeal concluded that "(d)espite whatever permission his employer may have given him," Buckbee was negligent to apply heat to this plug. We disagree: the issue of whether Buckbee sought and received permission to apply heat has significant bearing on whether he was contributorily negligent, rendering the exclusion of this evidence prejudicial, not harmless, to these plaintiffs.