542 So.2d 81 (1989)
Vera BUCKBEE, et al., Plaintiffs-Appellants,
Rockwood Insurance Company, Intervenor-Appellant,
v.
UNITED GAS PIPELINE COMPANY, INC., Defendant-Appellee.
No. 87-1201.
Court of Appeal of Louisiana, Third Circuit.
April 5, 1989.
Rehearing Denied May 4, 1989.
*82 Badon & Ranier, Drew Ranier, Lake Charles, for plaintiffs/appellants/appellees.
Fruge & Vidrine, Christopher B. Fruge, Ville Platte, for intervenor/appellee/appellant.
Stockwell, Sievert, Robert W. Clements, Bret Braham, Lake Charles, Pugh & Boudreaux, James R. Shelton, Lafayette, Stephen I. Young, Baton Rouge, for defendant/appellee.
Before GUIDRY, KNOLL and KING, JJ.
KNOLL, Judge.
This appeal addresses the propriety of sustaining a hearsay objection, and whether the trial court properly characterized this tort case as a negligence action when it formulated its jury instructions.
The survivors of William Buckbee (hereafter the Buckbees), namely, his wife and a minor child, brought this action against United Gas Pipe Line Co., Inc. (hereafter United Gas), the original owner of a used crude petroleum heater, to recover for William Buckbee's death. In 1980 William Buckbee and a co-worker, Roosevelt Vincent (hereafter Vincent), were preparing the heater for use at Lake Charles Refining Co. (hereafter Lake Charles Refining) when the heater, which Lake Charles Refining had purchased from the Jerry R. Watt Company (hereafter Watt), exploded as William Buckbee removed a plug from a heater coil by using an acetylene torch.
The Buckbees appeal an adverse jury determination that William Buckbee was guilty of contributory negligence. The Buckbees contend that the trial court erred: (1) in not allowing Vincent to testify about what William Buckbee told him approximately 20 minutes before the accident; and, (2) when it instructed the jury that if it found that William Buckbee was negligent and that his negligence contributed to his death, it must return a verdict in favor of United Gas.
Rockwood Insurance Company (hereafter Rockwood), the worker's compensation carrier of Lake Charles Refining which intervened in the trial court to recover worker's compensation death benefits it paid to Buckbee, also appealed the jury verdict, and adopted the Buckbees' assignments of error.
United Gas answered the appeal, contending that should we overturn the jury's determination regarding William Buckbee's contributory negligence, then it urges that the jury was manifestly erroneous in finding that United Gas was negligent. It further contends that the trial court erred when it granted Watt's motion for directed verdict, dismissing United Gas' third-party demand against Watt.
Watt filed a motion in this court, contending that: (1) the portion of United Gas' answer to the appeal regarding the dismissal of United Gas' third-party demand should be dismissed because United Gas failed to establish its claim against Watt in the trial court; and, (2) we should award damages to Watt for United Gas' frivolous appeal.

*83 FACTS
This case was before us once before when the trial court granted motions for summary judgment on behalf of several defendants. Buckbee on Behalf of Buckbee v. Aweco, Inc., 418 So.2d 698 (La.App. 3rd Cir.1982), writ denied, 422 So.2d 166 (La.1982). At that time we reversed part of the trial court's decision, and remanded the case for further action. At that time we summarized the facts as follows:
"On January 15, 1980, decedent, William Buckbee, and Mr. Roosevelt Vincent, employees at Lake Charles Refining Company, began to remove a plug from a coil on a used crude petroleum heater [which was originally owned and used by United Gas from the 1940s until the mid-1970s, and had been purchased by Lake Charles Refining from Watt in 1978]. The heater was not in use but had been washed [by Watt under its purchase contract with United Gas] prior to this operation. The removal of the plug was preparatory to an inspection of the heater coil. The inspection was to determine whether the coil was free from blockages and if the heater could be put into operation in the refining process. The plugs, due to their exposure to extreme heats in the refining process over long periods of time, often became frozen into place. To remove them required the use of a cold chisel (wedge) or the application of heat; however, the first plug had to be removed `cold' (no heat used) due to the possible existence of flammable materials in the coil.
[William] Buckbee, an experienced man in the refining business, was the maintenance foreman at Lake Charles Refining Company. From all accounts, [after first attempting to remove the plug cold,] Buckbee [left the scaffolding near the heater, went to the supervisor's office, and returned; he then] ... applied heat to remove the first plug from the heater coil. When the plug was removed an explosion and/or flare-up of flammable materials ensued. Both Buckbee and Vincent were burned. Buckbee [and Vincent] suffered severe burns from which... [Buckbee] died approximately one month later."

EVIDENTIARY RULING
Through this assignment of error the Buckbees and Rockwood contend that the trial court erred in refusing to allow Vincent to testify about what William Buckbee allegedly told him 20 minutes prior to the accident. In excluding Vincent's testimony on this issue, the trial court concluded that such a statement constituted double hearsay, and that since Vincent had a direct interest in the outcome of the litigation, the statement would be self-serving. Pursuant to LSA-C.C.P. Art. 1636, the Buckbees proffered the evidence by making the following statement which set forth the nature of the evidence:
"If Mr. Vincent were called as a witness and asked what was his understanding of why Mr. Buckbee left to go to the office, it would be to obtain permission to apply heat to the plug to remove it. Secondly, that if he were asked to testify as to what Mr. Buckbee said before he went to the office, he would say that he was going to get permission to apply heat, and that when he came back he said that he had obtained permission and they could go ahead and apply the heat."
The Buckbees summarize in brief the effect of the trial court's exclusion of Vincent's testimony as follows:
"The prejudicial effect of the trial court's ruling is reflected by the verdict of the jury. At the time of the accident, Vincent was doing exactly the same thing that Buckbee was doing; yet, the jury found that Vincent was not negligent and awarded him $750,000 ... The only difference between Vincent's case and the Buckbees' case, as far as United Gas's [sic] liability is concerned, is the testimony of [Buckbee's supervisors,] Chamberlain and Sheley. Each of them testified that he told Buckbee not to apply heat until the first plug had been removed, but no one told Vincent not to use heat on the plugs. The inescapable conclusion that must be drawn, therefore, is that the jury's finding that Buckbee *84 was negligent was based solely upon the testimony of Chamberlain and Sheley. Had the trial court allowed Vincent to testify that just before the accident Buckbee went to the office to get permission to use heat on the plugs and that when he came back from the office he said he had gotten permission to apply heat, the jury probably would have found that Buckbee was not negligent either."
The Buckbees and Rockwood contend that William Buckbee's statement to Vincent was admissible as part of the res gestae, or as reflections of his present sense impressions just prior to the accident.
Having thoroughly reviewed the record, we find the offered evidence clearly inadmissible as double hearsay because (1) it constitutes double hearsay, and (2) it does not form part of the res gestae. First, it is significant that United Gas was not the employer of William Buckbee at the time of the accident. Clearly then, the permission that Lake Charles Refining's supervisor(s) may have given William Buckbee to use heat in the removal of the plug, even if true, cannot be imputed to United Gas. Secondly, the record does not bear out that this statement was all that was in the jury's mind that separated William Buckbee's claim from that of his co-worker, Vincent. The record establishes that Vincent was generally a maintenance worker at the plant and was pressed into service as William Buckbee's helper. Vincent had minimal experience in the oil refining and welding trade. The record shows that he had no experience with the procedures that normally take place in the oil refining industry when a heater plug is removed. Furthermore, it is undisputed that Vincent was never told or instructed that the first plug on the heater had to be removed cold. On the other hand, William Buckbee was an experienced welder who had spent almost his entire work life, approximately 25 years, in and around the oil refining business. William Buckbee had performed the task of removing a heater plug in the past and was well aware that heat was not to be used to remove that first plug. Despite whatever permission his employer may have given him, the record is abundantly clear that in the eyes of the jury, William Buckbee, unlike his co-worker, knew that he was not supposed to remove the first plug from that heater with an acetylene torch. If the trial court erred in disallowing Vincent's testimony as to the hearsay statements, we find it was harmless error.

CONTRIBUTORY NEGLIGENCE DEFENSE
The Buckbees and Rockwood next argue that the trial court erred when it instructed the jury that if it found William Buckbee negligent and that his negligence contributed to his injury, it must return a verdict in favor of United Gas. In a multifaceted argument, the Buckbees and Rockwood contend that: (1) contributory negligence is not a defense to United Gas' absolute liability; (2) if, instead, this is a strict liability case, contributory negligence is not a bar to recovery; (3) if this is a negligence case, the jury should have been instructed that the ordinary negligence of the victim will not defeat the plaintiff's recovery in those cases where the defendant's breach of a duty to use a high degree of care resulted in an unreasonable risk of harm; and, (4) regardless of the type of case this is, the trial court should have instructed the jury that comparative negligence applied even though the accident occurred prior to the effective date of LSA-C.C. Art. 2323.

ABSOLUTE LIABILITY
The Buckbees and Rockwood first contend that the law of absolute liability should apply to this case, and argue that the disposal of used gas processing equipment constituted an ultrahazardous activity. We disagree.
Louisiana jurisprudence has recognized certain activities as ultrahazardous and has imposed absolute liability upon those engaged in such activities. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971). In Kent v. Gulf States Utilities Co., 418 So.2d 493, at page 498 (La.1982), the Supreme Court stated:
"Liability for ultrahazardous activities, on the other hand, involves different considerations *85 than liability under C.C. Art. 2317 for creating or maintaining a thing which presents an unreasonable risk of harm. There are some activities in which the risk may be altogether reasonable and still high enough that the party ought not undertake the activity without assuming the consequences. Such activities include pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like, in which the activity can cause injury to others, even when conducted with the greatest prudence and care.
For these particular activities, Louisiana courts have imposed an absolute liability (as contrasted to the strict liability previously discussed), which virtually makes the enterpriser an insurer. The enterpriser, whether or not negligent in any respect, causes the damage, and the injured party recovers simply by proving damage and causation.
In these cases of absolute liability (or liability without proof of negligence or other fault), liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. The steps taken by the enterpriser to protect others from the inherent risks of the activity are not relevant to the determination of liability.
The activity of driving piles, for example, is likely to cause damage, even when there is no substandard conduct on anyone's part. The activity, by its very nature, simply cannot be done without a high degree of risk of injury.
On the other hand, the transmission of electricity over isolated high tension power lines is an everyday occurrence in every parish in this state and can be done without a high degree of risk of injury. And when the activity results in injury, it is almost always because of substandard conduct on the part of either the utility, the victim or a third party." (Footnotes and citations omitted.)
Applying these standards to the facts of the present case, we find that United Gas' sale of a used gas processing heater does not qualify as an ultrahazardous activity. The record is void of any evidence that this activity is likely to cause damage when there is no substandard conduct on anyone's part. Kent, supra. On the contrary, the record preponderates that the equipment was safely removed from United Gas' property without incident, and that it was cut into component parts small enough to transport to the Lake Charles refinery. It was not until William Buckbee attempted to remove the plug with heat, without first testing the chamber of the heater, that this accident occurred.
The Buckbees cite the Langlois decision for the proposition that the storage of natural gas is an ultrahazardous activity. We have carefully reviewed Langlois and find that the gas involved in that case was toxic antimony pentachloride, not natural gas as Buckbee asserts. In the present case, the record nowhere establishes that the kerosene-like liquid which was in the heater was toxic.
Therefore in summary, we find that the facts of this case do not necessitate that we should impose absolute liability as a matter of policy.

STRICT LIABILITY
The Buckbees and Rockwood next argue that this is a products liability case, and United Gas should be held strictly liable as the seller of a defective thing.
A product is defective if it is unreasonably dangerous in normal use. Brumley v. Firestone Tire & Rubber Co., 459 So.2d 572 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 1267 (La.1985). A manufacturer is presumed to know of any defects in the products it manufactures and is strictly liable for injuries caused by such defects. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 250 So.2d 754 (La. 1971). A seller who knows of defects, or who, with reasonable inspection can find obvious or apparent defects, in the product he sells, stands in a similar position as the manufacturer of the product. Harris v. Bardwell, 373 So.2d 777 (La.App. 2nd Cir. 1979).
*86 United Gas purchased the Alcorn heater involved in this litigation in the 1940s, and it remained in operation at its Carthage, Texas plant until the mid-1970s. United Gas then shut down the part of its plant where this heater was in operation, and sold it "as is, where is" on December 8, 1976, as surplus equipment to Watt. Almost two years later, on April 27, 1978, Watt in turn sold the heater, which incidentally was still located at United Gas' Carthage plant, to Lake Charles Refining "as is, where is". Lake Charles Refining disassembled the heater in question and transported it, along with other equipment, to Lake Charles where it remained until this accident occurred on January 15, 1980.
In analyzing the facts of this case it is evident that United Gas was not the manufacturer of the heater. It is equally clear that it is not engaged in the business of selling used crude petroleum heaters, and in fact did not sell the heater in question to Lake Charles Refining. Unlike United Gas, it was Watt, from whom Lake Charles Refining purchased the heater, who was the party engaged in the business of selling such used equipment, and had the obligation to United Gas through their sales contract to clean all pressure containing vessels. Accordingly, we do not find that United Gas was strictly liable to William Buckbee.
In arguing its case for the imposition of strict liability, the Buckbees attempt to align this case with Winterrowd v. Travelers Indem. Co., 452 So.2d 269 (La.App. 2nd Cir.1984), affirmed, 462 So.2d 639 (La. 1985), and rely on the Second Circuit's decision in Winterrowd for the proposition that strict liability is applicable to a seller of used equipment who through its own actions makes the thing it sells unreasonably dangerous. We have reviewed the Second Circuit's Winterrowd decision and find that its holding, as it pertains to the expanded concept of manufacturer, is that the manufacturer of a product includes not only the original manufacturer but also "any entity that substantially modifies or materially alters the product after its original manufacture through the use of different components or methods of assembly. Thus a corporation or other entity may be cast in product liability for product modifications that engender injury-causing defects." Winterrowd v. Travelers Indem. Co., 452 So.2d at 273, 274. Although we agree with the holding of the Second Circuit in Winterrowd, we find it inapplicable to the facts herein. There is no evidence that United Gas modified the original heater in any way, or that it ever circulated gases or liquids through the heater which were never intended by the original manufacturer. Accordingly, we find the Buckbees' reliance on the Second Circuit's pronouncements in Winterrowd misplaced.

ORDINARY NEGLIGENCE
The next argument of the Buckbees and Rockwood, premised on the holdings of Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983) and Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978), is that United Gas had a high degree of care which superseded William Buckbee's ordinary negligence, and the trial court erred in failing to instruct the jury that William Buckbee's ordinary negligence should not defeat his survivors' tort claim.
Again, we note that the jurisprudence on which the Buckbees rely is inapposite to the facts of the case sub judice. Hebert stands for the proposition that electric transmission companies are required to exercise the utmost care to reduce hazards to life as far as practicable. As such, the jurisprudence has particularly ascribed a special duty to electric transmission companies to exercise utmost care. Hebert, supra, and cases cited therein. Similarly, Baumgartner exhibits a special limited class of plaintiffs, namely, pedestrians, who prior to the enactment of comparative fault, the jurisprudence held that ordinary negligence did not bar recovery. In the present case, the jurisprudence has not extended the exception to contributory negligence carved out in Baumgartner to those who sell used gas processing equipment, and has not designated the use of heaters in the processing of natural gas as an ultrahazardous activity which requires the exercise of the utmost care should those *87 used heaters later be sold. Accordingly, there was no error in the trial court's jury instruction regarding the effect of William Buckbee's contributory negligence.
As a sub-argument under negligence, the Buckbees and Rockwood also contend that even though the accident at issue occurred prior to the enactment of LSA-C.C. Art. 2323, Louisiana's comparative negligence article, the trial court erred in failing to instruct the jury that it should apply comparative fault to the case. We disagree.
The issue of the retroactive application of LSA-C.C. Art. 2323 was squarely met and rejected by this court in Wise v. La. Dept. of Transp. & Development, 470 So. 2d 954 (La.App. 3rd Cir.1985), writ denied, 475 So.2d 1108 (La.1985). Accordingly, under the rationale of Wise the trial court did not err when it chose not to instruct the jury on the doctrine of comparative fault.

FRIVOLOUS APPEAL
Watt contends that we should dismiss that part of United Gas' answer to the appeal which addressed the trial court's dismissal of United Gas' third-party demand against Watt on a motion for directed verdict, and that we should award it damages against United Gas for having taken a frivolous appeal.
United Gas conditionally raised the issue of the propriety of the dismissal of Watt on a motion for directed verdict in the event that we found error in the disposition of the issue of William Buckbee's fault. Since we have not found error in the jury determination that William Buckbee's contributory negligence bars his recovery, we have not had to reach United Gas' argument in favor of reversing the motion for directed verdict. Accordingly, Watt's motion to dismiss is now moot.
Furthermore, we have reviewed the record in light of whether United Gas should be cast for damages for having conditionally included Watt in its answer to the Buckbees' appeal. Appeals are favored, and thus, an appellate court is reluctant to impose the penal provisions of LSA-C.C.P. Art. 2164 which provide for the award of damages for a frivolous appeal. After thoroughly examining United Gas' brief and the record of this case, it is clear that United Gas raised a legitimate issue in good faith to bring into focus the entire panoply of characters involved in this litigation should we find the jury erred in its determination of William Buckbee's contributory negligence and, because of the conditional nature of its answer, it is evident that Watt's inclusion was not made for the purpose of delay. Accordingly, we find that Watt is not entitled to the damages requested.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to the Buckbees and Rockwood.
AFFIRMED.