KING, Judge.
This case has been remanded to this court by the Louisiana Supreme Court to determine whether, after considering certain evidence previously excluded, William Buckbee’s survivors should have their claim barred due to his contributory negligence and assumption of the risk. We also must address the issues of whether defendant, United Gas Pipeline Company, Inc., was negligent and liable to plaintiffs and, if so, determine what damages, if any, are due, and then address the intervention of Rockwood Insurance Company, the worker’s compensation carrier of Lake Charles Refining Company, decedent’s employer, and the claim of United Gas for contractual indemnification against the Jerry R. Watt Company who had originally cleaned and removed a crude petroleum heater from the United Gas plant.
The survivors of William Buckbee (hereinafter plaintiffs), namely, his wife and a minor child, brought this action against United Gas Pipe Line Company, Inc. (hereinafter United Gas), the former owner of a used crude petroleum heater originally located at its plant in Carthage, Texas, to recover for William Buckbee’s death. United Gas had several years earlier sold and contracted with the Jerry R. Watt Company (hereinafter Watt) to have the crude petroleum heater cleaned and removed from service at its plant. Watt had cleaned, cut up, and removed the crude petroleum heater from service at the United Gas plant and later sold it to the Lake Charles Refining Company (hereinafter Lake Charles Refining) who had further dismantled and cut up the used crude pe *81 troleum heater and moved it to its plant in Lake Charles, Louisiana. In 1980, William Buckbee (hereinafter Buckbee) and a coworker, Roosevelt Vincent (hereinafter Vincent), employees of Lake Charles Refining, were preparing the used crude petroleum heater for use by Lake Charles Refining Company, at its plant in Lake Charles, Louisiana, when the used crude petroleum heater exploded as Buckbee removed a plug from a heater coil by using an acetylene torch.
This case was before this court previously when the trial court granted motions for summary judgment on behalf of several defendants. We reversed and remanded for further proceedings. See, Buckbee on Behalf of Buckbee v. Aweco, Inc., 418 So.2d 698 (La.App. 3 Cir.1982), writ den., 422 So.2d 166 (La.1982).
This case was again before this court on appeal by plaintiffs from a jury verdict denying plaintiffs’ claim. We held that Vincent’s testimony about a statement made by Buckbee to Vincent shortly before the accident constituted double hearsay and was properly excluded by the trial court from evidence and consideration by the jury and affirmed the jury verdict denying plaintiffs’ claim. See, Buckbee v. United Gas Pipeline Co., Inc., 542 So.2d 81 (La.App. 3 Cir.1989).
The Louisiana Supreme Court granted writs, See, Buckbee v. United Gas Pipeline Co., Inc., 548 So.2d 312 (La.1989), reversed our determination that the trial court had not erred in excluding Vincent’s testimony about certain hearsay testimony relevant to the question of Buckbee’s contributory negligence and our affirmation of the jury verdict denying plaintiffs’ claim. See, Buckbee v. United Gas Pipeline Co., Inc., 561 So.2d 76 (La.1990). The Supreme Court then remanded this matter to our court to conduct a de novo review of the record in accordance with Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), on remand, 329 So.2d 818 (La.App. 1 Cir.1976), and render judgment on the merits. In remanding this case to us, the Supreme Court specifically instructed this court that we should consider Vincent’s testimony about Buckbee’s statement, made to him shortly before the accident, that Buckbee intended to go to the office of his supervisors to seek permission to apply heat to the plug which Buckbee made just before descending the scaffold and going to the plant office.
We must also address all of the other issues of this case which were presented on the original appeal, and which were affected by the jury verdict, namely the affirmative defenses of contributory negligence and assumption of the risk raised by United Gas; the issue of the liability of United Gas; damages, if any; and the intervention of Rockwood Insurance Company (hereinafter Rockwood), the worker’s compensation carrier of Lake Charles Refining. However, we find that our de novo review under Gonzales does not apply to United Gas’ third party demand against Watt. United Gas filed a third party demand against Watt for contractual indemnification. At the close of trial, Watt was dismissed by the trial judge on a motion for directed verdict. We find that the judgment dismissing Watt is subject to the normal standard of appellate review, since that judgment was not affected by the eviden-tiary ruling which tainted the jury verdict, and since Watt’s liability was not presented to the jury for their determination.
FACTS
The following are the facts, as summarized by the Louisiana Supreme Court in the case remanded to us: William Buckbee was employed as the maintenance foreman for Lake Charles Refining. He was assigned the job of reassembling and installing a used crude petroleum heater previously owned by United Gas and Watt. The used crude petroleum heater consisted of a steel frame containing firebrick and six-inch steel tubes welded into coils. It weighed approximately 200 tons, and measured forty feet long, fifteen feet wide, and thirty feet high. It was originally owned and used by United Gas at its plant in Carthage, Texas. When United Gas had no further use for the crude petroleum heater and certain other equipment in its Car *82 thage, Texas plant, it sold the equipment to Watt, a used equipment dealer. The crude petroleum heaters were cleaned, cut up, and safely dismantled by Watt in the United Gas Plant in Carthage, Texas. Watt later sold the used crude petroleum heater to Lake Charles Refining who then further dismantled and safely cut up the used crude petroleum heater and transported it to its plant near Lake Charles, Louisiana. The used crude petroleum heater sat disassembled and unused for some time on the plant site of Lake Charles Refining. Lake Charles Refining then decided to reassemble the used crude petroleum heater and place it in service at its Lake Charles, Louisiana plant site.
On January 15, 1980, in the process of readying the used crude petroleum heater for service, Buckbee and a co-employee, Vincent, attempted to remove a tapered metal plug protruding from a “mule-ear header” on the exterior of the heater. Plugs, weighing two to three pounds, and the aperture into which they are placed, provide a means of visually inspecting the interior of the long pipes or tubes which run the full length of the heater and make a 180 degree return bend at the other end. The plugs are each placed in a “mule ear header,” a metal device weighing between two and three hundred pounds, which fits over the open ends of the pipes, with the plugs being secured to the “mule ears” by a shackle which fits into notches on the “mule ears” on either side of the header and can then be tightened by a bolt running through the center of the header.
Buckbee and Vincent removed the shackle from the “mule ear header” and tried to remove the first plug on the used crude petroleum heater. After two hours of work with wrenches and sledge hammers, they found themselves unable to remove the first plug. Buckbee then left the scaffold where he and Vincent were working, went into the plant office, remained there for about ten minutes, returned, and remounted the scaffold. At that point, Buck-bee and Vincent used an acetylene torch in an effort to heat and loosen the first plug. Although the crude petroleum heater had been out of service for several years, and although it had been cleaned, safely dismantled, cut up, and transported from Texas to Louisiana, the tube behind the plug apparently still contained some volatile flammable material. Application of the acetylene torch to the plug and surrounding heater pipe surface caused a fire to ignite, coincident with the blowing out of the plug. The resulting fire burned both Buckbee and Vincent severely. Vincent recovered; Buckbee died three weeks later from his injuries.
What follows are further facts ascertained by our study of the record.
The contract between United Gas and the Watt Company contained the following provision:
“17. Buyer shall be required to properly clean all pressure containing vessels at the Carthage plant before it begins any removal operations. These vessels have processed highly volatile hydrocarbons and natural gas. A United inspector will assist in monitoring these vessels before any dismantling is begun.”
J.H. Ecterhoff was vice-president of pipeline operations for United Gas and was responsible for supervising the execution of the contract. Ecterhoff testified that the monitoring of United Gas employees was to ensure that no person was injured and no equipment was damaged at the United Gas plant in Carthage, Texas while the heaters were being dismantled.
Glen Sanders was Vice-President in charge of Northern Operations for United Gas. He testified that, because the Carthage, Texas plant was operating at the time the heaters were being removed, and, for the safety of the plant, it was the job of United Gas employees to monitor the removal of the equipment by Watt in a safe manner. Sanders stated that some of the equipment to be removed from the plant was pure junk, but that some was reusable. His concern was to only have the equipment cleaned so that it could be safely removed from the United Gas plant, and not to provide a warranty as to its safety for further use as used equipment.
*83 Buck Hogue was shift foreman for United Gas and he testified that it was his job to see that the right equipment was removed and that nothing was torn down or removed from the United Gas plant in Carthage, Texas that should not be removed.
United Gas originally purchased the Al-corn crude petroleum heater involved in this litigation in the 1940s, and it remained in operation at its Carthage Texas plant until the mid-1970s. United Gas then shut down the part of its plant where this crude petroleum heater was in operation, and sold it “as is, where is” on December 8, 1976, as surplus equipment to Watt. Watt cleaned, cut up, and dismantled the used crude petroleum heater at the United Gas plant in Carthage, Texas pursuant to a contract with United Gas. Almost two years later, on April 27, 1978, Watt in turn sold the used crude petroleum heater, which was still physically located at United Gas’ Carthage, Texas plant site, to Lake Charles Refining “as is, where is”. Lake Charles Refining then further cut up and disassembled the used crude petroleum heater and transported it, along with other equipment, to Lake Charles, Louisiana where it remained unused until this accident occurred on January 15, 1980.
Joseph Chamberlain was co-owner of Lake Charles Refining and he testified that Buckbee’s background was that of a welder. Chamberlain testified that Buckbee was an experienced welder because he had performed the same type work at a refinery in Kansas. Chamberlain stated that his employees were instructed to remove all plugs cold. When Chamberlain viewed the used crude petroleum heater immediately after the accident, he noticed the shackle on the header had been removed. The shackle is a safety device and is to remain on until the plug is completely loose in order to keep the plug from blowing out. Chamberlain testified he personally told Buckbee to remove the first plug from the used crude petroleum heater cold one month before the accident and, again, the day before the accident. Chamberlain stated Buckbee’s temper was short.
Blane Sheley was a superintendent at Lake Charles Refining and a good friend of Buckbee. He knew Buckbee for about eight years and met him doing refinery work in Kansas. Sheley testified that Buckbee was an experienced welder and had pulled plugs before in Kansas and that it was common industry practice to pull plugs cold.
Sheley testified that he, Buckbee, and a young trainee shared living quarters. The night before the accident, the trainee asked many questions about the refining business and, during that discussion, Sheley reminded Buckbee that the first plug on a crude petroleum heater was always to be removed cold for safety reasons. Sheley testified that the discussion that night lasted approximately thirty minutes. Sheley testified that, if he were trying to remove a first plug from a heater, he would do it cold because it is a safety precaution.
Glen Sanders testified that proper cleaning is only intended for safety during the work being done at the moment. If the project takes a long period of time, the unit has to be re-tested for the presence of a volatile atmosphere and re-cleaned, if necessary, before further work continues on it. He testified that he would re-test a heater even after a lunch break, before resuming work on it for his own safety.
Plaintiffs proffered Vincent’s testimony, in the form of a stipulation, that if Vincent were called as a witness and asked what Buckbee said to him before he descended the scaffolding to go to the plant office, he would have said it was to obtain permission to apply heat to the first plug to remove it. This proffered testimony was excluded by the trial court as hearsay and this Court previously affirmed such exclusion, Buckbee v. United Gas Pipeline, Inc,, 542 So.2d 81 (La.App. 3 Cir.1989). The Louisiana Supreme Court has ordered us to consider this excluded hearsay statement finding it admissible. Buckbee v. United Gas Pipe Line Co., Inc., 561 So.2d 76, at page 85 (La.1990).
LAW
Defendants pled the defenses of contributory negligence and/or assumption of the *84 risk by Buckbee which were available to them under the applicable law at the time of the accident.
Assumption of the risk turns on the plaintiffs actual knowledge of the danger, and whether he has voluntarily encountered a known risk, whereas contributory negligence is governed by the objective standard of whether the plaintiff knew or should have known of the risk. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988); Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979). The question to be addressed is whether plaintiff negligently disregarded a known risk or, in other words, whether plaintiffs conduct fell below the standard required of a “reasonable man of ordinary prudence” under the circumstances. See, Murray v. Ramada Inns, Inc., supra; Soileau v. South Central Bell Tele. Co., 406 So.2d 182 (La.1981).
Both Sheley, Buckbee’s good friend, and Chamberlain testified that each had recently discussed with Buckbee the importance of removing the first plug cold, due to the danger of applying heat. Sanders and She-ley each testified that it was common knowledge among oil industry workers that using heat on a plug to remove it was dangerous. Both Chamberlain and Sheley testified that Buckbee was an experienced welder and had performed the same type work in Kansas.
In this case, Vincent’s testimony to Buckbee’s first hearsay statement, that Buckbee intended to seek permission to apply heat to the plug, which Buckbee made just before descending the scaffold and going to the plant office, is to be considered by us as evidence that Buckbee formulated the intention to seek his superior’s permission to apply heat and as some evidence that Buckbee did indeed act in accordance with his expressed intention and that he did approach his superiors in the moments before the accident and that he did request of them permission to apply heat. That Buckbee sought permission to apply heat is directly relevant to whether he was contributorily negligent.
The fact that Buckbee left the scaffold in order to seek permission to apply heat indicates that it is unlikely that Buckbee would have sought permission to apply heat if he had not known that using heat was irregular and dangerous. If applying heat was a normal, routine and safe procedure, there would have been no need for Buckbee to obtain special permission. It further indicates that Buckbee knew and understood that he had previously been ordered not to use heat to remove the first plug.
We have no way of knowing from the record whether Buckbee actually received permission to apply heat. We do know, however, that there is no scintilla of evidence to prove that Buckbee was ordered to apply heat. We can find no jurisprudential authority that holds that obtaining permission to perform what is well known to be a dangerous act absolves one of contributory negligence. Whether or not permission was granted might make a difference for assigning comparative fault but comparative fault is not the law applicable to this case. We are aware of the Louisiana jurisprudence that holds that an employer who places his employee in a position of undisclosed danger is liable if the employee is injured thereby. However, this principle of law is inapplicable in the case at bar. Here Buckbee, just as was Lake Charles Refining, was well aware of the danger of using heat to remove a plug. Even assuming that Buckbee’s act in leaving to seek permission to apply heat demonstrates that Buckbee exercised the care of a reasonable prudent man under like circumstances to obtain permission from his superiors to use heat to remove the first plug, it would not resolve the question of whether Buckbee. assumed the risk by his further conduct before applying heat to the plug.
We find applicable to the case before us the rule that where an employee is not placed by an employer in a position of undisclosed danger, but is a mature and experienced man, doing the ordinary work he was engaged to do, and whose risks are obvious to everyone, he assumes the risks of the employment, and no negligence can be imputed to an employer for an accident to him therefrom. Swilley v. American Fire & Casualty Company, 148 So.2d 157 *85 (La.App. 1 Cir.1962), and authorities cited therein. When a person exposes himself to a known danger he assumes the risk and is guilty of contributory negligence if injured.
Our Supreme Court has held on numerous occasions that assumption of the risk turns on the plaintiffs actual knowledge of the danger, and whether he has voluntarily encountered a known risk. Murray, supra; Bass, supra. For an employee to be held contributorily negligent and/or to have assumed the risk of the harm which ultimately resulted in his injury, the defendant must prove by a preponderance of the evidence that the plaintiff voluntarily and knowingly exposed himself to the danger which resulted in his injury. That determination requires a dual finding of (1) a known and obvious danger; and (2) a readily available reasonable alternative. Daniel v. Griffis, 479 So.2d 503 (La.App. 1 Cir.1985), writ den., 483 So.2d 1019 (La.1986); Billedeaux v. Adams, 355 So.2d 1345 (La.App. 3 Cir.1978), writ granted, 358 So.2d 640 (La.1978), on remand 360 So.2d 637 (La.App. 3 Cir.1978). The record in this case is full of evidence proving that Buckbee was an experienced, knowledgeable, and highly regarded oil field welder. The fact that he sought special permission to apply heat demonstrates that he knew this was not a regular or routine practice to be used in the face of a known and obvious danger. We do know that there is no proof in the record that Buckbee was ordered to apply heat. Even assuming that Buckbee had received permission to apply heat to the plug, Buckbee still had a choice between continuing the traditional method of removing the plug cold with hammering and chiseling or, before using the dangerous method of applying heat to the plug, to have the heater tubes first tested for the presence of a volatile atmosphere before applying the heat and to then only apply heat to the plug with the shackle properly secured to the “mule ear header.” Unfortunately, Buckbee chose to encounter a risk which was well known to him without first taking any of these precautions which were readily available reasonable alternatives. Under these circumstances we do not find that Buckbee’s conduct, before applying heat to the plug, was that of a reasonably prudent man before voluntarily and knowingly exposing himself to a known and obvious danger. The law that applies in this case is a harsh one, but we do not have the authority to ignore it.
After carefully considering all of the evidence, we find that Buckbee was contribu-torily negligent and assumed the risk and would be barred from recovery. Thus, his survivors’ claim is also barred.
Ordinarily, we would pretermit further discussion of the negligence of the defendants in view of a finding of contributory negligence on the part of a plaintiff sufficient to bar his claim under the then applicable law. However, under the circumstances of this case, which has on numerous previous occasions been heard by the appellate courts of this State, and in light of which the separate appeals of the defendants have never been passed upon, we will also, in the interest of future judicial efficiency in the event our decision on plaintiff’s contributory negligence is reversed, rule on one of the issues presented by the United Gas appeal.
We will address the issue of whether United Gas was liable under a theory of ordinary negligence.
Our Supreme Court stated in Forest v. State, Through Louisiana D. of Transp., 493 So.2d 563 (La.1986), that in cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. The duty-risk approach as set forth in the jurisprudence is essentially an analysis of the following questions:
(1) Was defendant’s conduct a cause-in-fact of the accident?
(2) Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
(3) Did defendant breach that duty?
(4) What damages did plaintiff sustain?
Our jurisprudence holds that everyone is under an obligation, whether his role be that of an agent or owner, of not allowing things subject to his control to injure another, either because of active or *86 passive negligence. Whenever property in one’s control becomes dangerous to third persons, there is a duty to act affirmatively and should there be nonperformance resulting in injury to third persons, the law imposes liability on the part of an agent or owner.
These are not the facts in this case. United Gas was neither an owner, nor an agent for the owner, of the used crude petroleum heater at the time of the accident.
The heater was originally owned and used by United Gas at its Carthage, Texas plant from the 1940’s until the mid-1970’s. United Gas discontinued use of the heater in 1975 or 1976 and, by a written contract with Watt, sold the heater to Watt. As part of this contract, Watt agreed to clean the heater and to safely remove it from service in the United Gas plant. Watt spent at least 18 months doing this and it was done safely. Watt then offered the used crude petroleum heater for resale to Lake Charles Refining who purchased the used crude petroleum heater from Watt in 1978. At the time Lake Charles Refining inspected the used crude petroleum heater, prior to its purchase from Watt, it discovered that the heater had already been safely cut on with welding torches by Watt in removing it from the United Gas plant. After Lake Charles Refining purchased the used crude petroleum heater from Watt, it sent a crew of its employees to further cut and dismantle the heater for transportation to Lake Charles. At that time, Lake Charles Refining employees again safely used cutting torches on the heater in the dismantling process. The heater was then removed to Lake Charles and sat idle at the Lake Charles Refining facility for several years until the time it was being reassembled by Lake Charles Refining for use in its plant in Lake Charles at the time of the accident in which Buckbee was killed. Buckbee was working on the used crude petroleum heater at that time to put it back into operation in Lake Charles at the plant of Lake Charles Refining. Certainly United Gas was not the owner or an agent for the owner of the used crude petroleum heater at the time of the explosion. United Gas had sold the heater to Watt in 1976 for dismantling over three years before the accident. Watt had in turn sold the dismantled heater to Lake Charles Refining over two years before the accident. Watt, not United Gas, placed the used crude petroleum heater in commerce. Lake Charles Refining itself further safely dismantled and cut on the heater. Lake Charles Refining, not United Gas, sought to reassemble and reuse the cut on and dismantled used crude petroleum heater in its commercial operations. United Gas did not sell the heater to Watt for purpose of its continued use. Both Watt and Lake Charles Refining were well aware that the crude petroleum heater had been cut on and dismantled and of the known danger of welding on a closed container that had previously been used to process volatile hydrocarbons and gas. Under a duty-risk analysis we can not find that United Gas had a duty to Buckbee or anyone else during the reassembly of the used crude petroleum heater. See, e.g. Manuel v. Odeco, Inc., 563 So.2d 1179 (La.App. 1 Cir.1990), writ den., 566 So.2d 401, 402 (La.1990).
We are called upon to decide whether there existed at the time of the accident any relationship between United Gas and the used crude petroleum heater which imposed liability on United Gas or gave rise to a duty that United Gas breached. Watt exercised dominion over the heater as owner by purchasing and safely removing the heater from the control of United Gas, and, by then reselling it “as is, where is” to Lake Charles Refining. Lake Charles Refining exercised dominion over the used crude petroleum heater as owner by further dismantling and cutting on and safely removing the heater from Carthage, Texas, to its plant in Lake Charles, Louisiana, by storing the used crude petroleum heater in its own facility for several years, and then by attempting to put the used crude petroleum heater into operation at its plant at the time of the accident.
The nature of the transactions from United Gas to Watt and from Watt to Lake Charles Refining and the further activities of Watt and Lake Charles Refining in *87 working on the used crude petroleum heater prevent the creation of any legal duty on the part of United Gas as to the condition of the heater. The heater was sold to both Watt and Lake Charles Refining “as is”. Watt knew this when it bought the crude petroleum heater from United Gas and safely dismantled and removed the heater from service at the United Gas plant at Carthage, Texas. Lake Charles Refining knew this when it bought the crude petroleum heater from Watt. Lake Charles Refining knew of the condition of the used crude petroleum heater as it had also safely cut on the used crude petroleum heater and dismantled it for removal to its plant in Lake Charles, Louisiana before trying to put it to use. Watt was an intervening owner between United Gas and Lake Charles Refining. Lake Charles Refining, for whom Buckbee worked, was also an intervening owner. Both intervening owners had previously safely cut on and dismantled the used crude petroleum heater.
United Gas contracted with Watt to flush and clean and safely remove the used crude petroleum heater from its Carthage, Texas plant. This was in fact done as Watt cleaned and cut on the used crude petroleum heater and safely removed it. Watt then sold the used crude petroleum heater to Lake Charles Refining “as is, where is.” Lake Charles Refining further safely cut on the used crude petroleum heater and then moved it to its Lake Charles plant where it sat idle for several years. The used crude petroleum heater blew up when the new owner’s employee was working on it with heat over three years after United Gas had originally sold the used crude petroleum heater and after the used crude petroleum heater had been safely removed from service at the plant of United Gas.
For these reasons, we would also reverse the jury verdict and find that United Gas was not negligent and liable to Buckbee, even if Buckbee was not contributorily negligent and did not assume the risk.
Having concluded that Buckbee was eon-tributorily negligent and assumed the risk and that, in any event, United Gas would not be liable for Buckbee’s injuries and death, we find that the issues of damages, the third party demand of United Gas against Watt, and Rockwood’s intervention are moot.
For these reasons, the judgment of the trial court is affirmed. All costs are taxed to plaintiff-appellant.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
LABORDE, J., dissents for reasons assigned by KNOLL, J.