614 So.2d 1233 (1993)
Vera BUCKBEE, Individually and as the Administratrix of the Succession of William Buckbee, and on Behalf of the Minor, Larry Dean Buckbee
v.
AWECO, INC., et al.
No. 91-C-2467.
Supreme Court of Louisiana.
February 24, 1993.
Order Permitting Withdrawal of Application for Rehearing March 25, 1993.
*1234 Drew Averill Ranier, Michael R. Garber, Badon & Ranier, William B. Baggett, David W. Robertson, Baggett, McCall & Burgess, Lake Charles, for applicant.
Robert W. Clements, Stockwell, Sievert, Viccellio, Clements, Lake Charles, Christopher B. Fruge, Ville Platte, Bret Lane Barham, Lake Charles, James R. Shelton, Pugh & Boudreaux, Lafayette, James C. Lopez, Charles M. Jarrell, Opelousas, for respondent.
LEMMON, Justice.[*]
This pre-comparative fault case arises out of an explosion which occurred at the Lake Charles Refining Company (LCR) refinery when William Buckbee, LCR's maintenance foreman, and Roosevelt Vincent, Buckbee's co-employee, used an acetylene torch to remove a plug from a crude petroleum heater previously owned by United Gas Pipeline Company, Inc. In a previous opinion this court addressed issues involving the exclusion of evidence bearing on Buckbee's contributory negligence. We reversed the dismissal of the suit by the lower courts and remanded the case to the court of appeal to decide the case on the record, without according any deference to the verdict of the jury that did not have the benefit of the excluded evidence. The principal issue presently before this court is the correctness of the intermediate court's determination in a three-to-two decision on remand that Buckbee's recovery was barred by his contributory negligence.

Facts
United had used the heater for over thirty years in the operation of a plant. When United closed the section of the plant in which the heater was located, the heater and other surplus equipment were sold to a used equipment dealer, Jerry R. Watt Company (Watt), who in turn sold the heater to LCR. The heater, consisting of a steel frame, fire brick and six-inch steel tubes welded into coils, weighed about 200 tons and measured forty feet long, fifteen feet wide, and thirty feet high. LCR dismantled the heater for transportation to its refinery and reassembled it there. The heater then remained unused for several years.
On the day of the accident Buckbee and Vincent were assigned the task of preparing the heater for service. Buckbee knew from instructions from his supervisors and from his experience in the industry that the safe way to handle equipment previously used to process volatile hydrocarbons was to remove the first cap without the application *1235 of heat. Buckbee and Vincent tried for two hours to remove a tapered metal plug from a heater coil with wrenches and sledge hammers in order to inspect the coil for blockage. Buckbee then climbed down from the scaffold and went to his supervisor's office to obtain permission to apply heat to the plug.[1] He returned ten minutes later, and the two employees used a "rosebud" (not a cutting) torch to remove the plug. The ensuing explosion apparently occurred because some volatile material had not been removed from one of the tubes after United took the heater out of use.[2] Both workers were seriously injured, and Buckbee died three weeks later from the injuries.
Buckbee's widow and child filed this action against United, which was consolidated for trial with a similar action filed by Vincent. The jury, answering special interrogatories, found that United was negligent and that its negligence caused the injuries, but further found that Buckbee was contributorily negligent and Vincent was not.
On plaintiffs' appeal, the court of appeal affirmed.[3] 542 So.2d 81. The court concluded that the trial judge correctly refused to allow Vincent to relate what Buckbee told him prior to the accident, ruling that the evidence was double hearsay.[4] The court also observed that any permission by Buckbee's supervisor was not imputable to United, who was not Buckbee's employer. Rejecting plaintiffs' argument that the evidence regarding permission would have placed Buckbee in the same position as Vincent in the eyes of the jury, the court noted that the difference in the verdict in the Buckbee and Vincent cases could be explained by other circumstances.[5]
This court granted plaintiffs' application for certiorari and reversed. 561 So.2d 76. We ruled that Vincent's testimony about Buckbee's first statement (he was going to the office to obtain the supervisor's permission to use heat) was hearsay, but was admissible under an exception to the hearsay rule as evidence of Buckbee's state of mind or intent, offered to prove the declarant's then existing condition or future action. We observed that the admissible hearsay statement, along with Vincent's testimony that Buckbee immediately descended the scaffold and entered the office for about ten minutes before returning to apply heat, constitutes "powerful circumstantial proof that Buckbee in fact sought his supervisors' permission to apply heat." Id. at 85. We concluded that the error in excluding the testimony was prejudicial, and not harmless as suggested by the court of appeal, because it was directly relevant to the central issue of Buckbee's contributory negligence and probably explained why the jury found Buckbee contributorily negligent while exonerating Vincent. The jury's exposure to the onesided version of the evidence (the testimony of the two supervisors that they instructed Buckbee to remove the plug "cold" and never gave him permission to apply heat) was not conducive to a fair evaluation of the reasonableness of Buckbee's conduct in seeking permission to use heat on a heater which presumably had been cleaned, certainly had been dismantled, and clearly showed signs *1236 of having been cut by torches. Finally, the evidence was relevant to show Buckbee's appropriate attitude toward safety and caution, rather than a hasty and careless disregard for his supervisors' instructions. The case was remanded to the court of appeal to conduct a de novo review of the record and to render judgment on the merits.
On remand the court of appeal again affirmed the dismissal of plaintiffs' action. 587 So.2d 79. Reasoning that Buckbee's seeking permission to use heat indicated he knew using heat was irregular and dangerous and that he had been previously instructed not to use heat to remove the first plug, the court concluded that Buckbee's obtaining permission did not absolve him of contributory negligence (although permission might make a difference in a comparative fault regime). Then addressing the issue of United's negligence, the court noted that United was not the owner of the heater at the time of the explosion and concluded that United had no duty "to Buckbee or anyone else during the reassembly of the used crude petroleum heater." Id. at 86. The court further observed that United sold the heater "as is, where is" and that the nature of the transactions did not create any legal duty on United regarding the condition of the heater.[6]
This court granted plaintiffs' application for certiorari. 590 So.2d 580.

United's Fault
The jury found United negligent, but plaintiffs were denied recovery because of contributory negligence. The court of appeal in its first opinion agreed that Buckbee was contributorily negligent, thereby pretermitting the issue of United's fault. In its second opinion the court addressed both issues and decided against plaintiffs on both.
In reviewing United's fault, we utilize the duty-risk analysis under Fowler v. Roberts, 556 So.2d 1 (La.1989). We inquire first whether United's conduct was a cause-in-fact of the accident.[7] Clearly United's failure to remove the oil from the heater was a cause-in-fact of the accident, because if United had removed the oil, the accident would never had occurred as it did. The more critical inquiries in this case involve the questions whether United had a duty to conform its conduct to a specific standard (the duty issue) and, if so, whether the risk of injury created by United's breach of duty was within the scope of protection of the rule of law which gave rise to the duty (the scope of duty issue).[8]
The court of appeal relied on the fact that United was no longer the owner of the heater at the time of the explosion. That fact, while perhaps pertinent to a strict liability determination under La.Civ.Code art. 2317, has little significance in the determination of United's duty, as a user and seller of a heater previously used by United to process dangerous materials, to future owners of the heater and to persons who might later come into contact with the heater.
At the time of the sale United knew that the heater had been used in its plant operations to process highly volatile hydrocarbons. United also knew that residual oil in the heater could present dangers to others who might subsequently use or otherwise encounter the heater. In selling the heater to a used equipment broker, United knew *1237 that the heater would be resold and might be reused. United further knew that heating torches would probably be used to dismantle and to reassemble the huge heater, and perhaps to make it operational for future use. By selling the heater "as is, where is," United arguably limited its warranty obligation under the sales contract as to the performance of the heater for its intended use by the buyer and the buyer's successors. But that limitation on contractual warranty is not determinative of United's obligations in tort for hazardous conditions created by United and known to exist at the time of the sale.
United's knowledge that residual oil in its heater could present dangers of explosion to future users gave rise to a duty to make sure that the oil from its operations was removed from the heater. United apparently recognized this duty to eliminate the hazard when it required in the contract of sale that the buyer clean the vessels which had been used to process highly volatile hydrocarbons and natural gas, obligating itself to provide an inspector to assist in monitoring the cleaning. The buyer did not use the proper method for cleaning hydrocarbons from the heater, and United either did not monitor the cleaning or performed the monitoring in a substandard manner. In either event neither United nor its vendee removed the oil from the heater, and the presence of the residual oil led in logical sequence to the foreseeable result.
As to the scope of duty inquiry, United's breach of duty to clean the heater properly gave rise to the very risk that the duty was imposed to protect againstthat a subsequent user may believe the heater to be free of volatile materials and apply heat while dismantling, transporting, reassembling or preparing the heater to be used again.
We conclude that United, who introduced the hydrocarbons into the heater, had the duty to remove the residual oil which constituted a significant hazard before transferring the heater to a broker who intended to resell it to a future user. We further conclude that the scope of protection of this duty extended to persons who came in contact with the heater as it was being placed back into use, inasmuch as there was an ease of association between the duty that was breached and the injury that occurred. The jury was not manifestly erroneous or legally incorrect in finding that United's negligence was a legal cause of this accident. Accordingly, United is liable for the damages sustained by Buckbee and his survivors unless contributory negligence bars their recovery.

Contributory Negligence
In the first opinion by this court, we remanded the case to the court of appeal to consider the hearsay evidence which we deemed significant enough to make a difference in the contributory negligence determination. On remand the court of appeal viewed the evidence of Buckbee's seeking permission to use heat as indicative only of the fact that Buckbee knew the use of heat was irregular and dangerous. Further observing that one's obtaining permission to perform an act known to be dangerous does not absolve one from contributory negligence, the court reaffirmed its previous conclusion that Buckbee's conduct barred his recovery.
The undisputed fact that Buckbee knew, from experience and from instructions by his supervisor, that the safest way to prepare the heater for use was to remove the cap without using heat was relevant to contributory negligence, but clearly was not determinative of the issue. The critical inquiry is whether Buckbee's conduct, in the light of the entirety of his knowledge and of the surrounding circumstances, barred his recovery in an all-or-nothing contributory negligence regime.
Contributory negligence must be determined objectively according to the standard of the conduct expected of a reasonable man under like circumstances. Smolinski v. Taulli, 276 So.2d 286 (La. 1973). The defendant has the burden of proving contributory negligence.
*1238 United proved that Buckbee's supervisor instructed him, the night before as well as thirty days before the accident, to remove the plug "cold" and that Buckbee knew there was some potential danger in applying heat to the plug if the heater had not been properly cleaned after being used to process volatile hydrocarbons.
On the other hand, plaintiffs presented evidence that Buckbee, who was regarded by his supervisors as a safety conscious worker, attempted for a substantial period of time to remove the first cap "cold," but the task appeared to be insurmountable. An expert testified that removing the plug with heat was safe if the heater had been properly cleaned, and that there was no absolutely safe way to remove the plug with volatile hydrocarbons in the heater since saws, cutting wheels and sledgehammers could produce sparks and heat that could cause a fire or explosion. The excluded evidence showed that Buckbee, rather than taking other measures on his own after "cold" removal would not work, approached his supervisors about the advisability of applying heat under the existing circumstances which included, as noted in our previous opinion, that the heater "presumably had been `cleaned,' ... certainly had been dismantled, ... had sat idle for over two years, and ... showed signs of having been cut previously with torches." 561 So.2d at 86. This tended to prove that Buckbee did not simply ignore the supervisors' previous instructions, but rather sought further advice. Buckbee's actions in immediately using heat after consulting with his supervisors about his next step under the circumstances strongly suggests that the supervisors either agreed the use of heat was called for in light of the history and condition of the heater and the impossibility of removal of the cap "cold," or at least did not forbid him to do so because they perceived a significant continuing danger. Buckbee and the two supervisors believed the heater had been cleaned of liquid hydrocarbons, and the fact that the heater had been cut with torches and was open to the atmosphere in several places indicated there were probably no combustible vapors remaining.
Buckbee's applying heat to the plug must be viewed in light of the circumstances which led to that act. He saw a heater that should have been cleaned (and was required to have been cleaned) before it was sold, that had been cut apart without apparent incident and that had laid idle for a long time. He was unaware that United and its vendee had not properly cleaned the heater, but he had been told the heater had been cleaned and he knew that heat had been applied to dismantle it and to reassemble it. He could not open the heater to check for liquid hydrocarbons, and sniffers used by others had not detected flammable materials. He was under economic and psychological pressures to get the job done. In view of the overall circumstances, the evidence of earlier instructions to Buckbee and his general knowledge of possible danger did not establish contributory negligence as a matter of law.
As we stated in our previous opinion in this case, "a plaintiff's contributory negligence is a relative, not an absolute, determination." 561 So.2d at 85. A comparison of the duties of the parties and the circumstances under which they acted or failed to act is necessary, especially in a case occurring in a contributory negligence regime.
In Travelers Insurance Co. v. Southwestern Transportation Co., 488 So.2d 978 (La.1986), the plaintiff had been warned of a hole in the floor of the defendant's delivery truck, but stepped in the hole while he was helping to unload the truck. This court noted that there was an enormous disparity between the defendant's duty to prevent or remedy the hazard that it allowed to exist in the floor of the truck during the unloading process and the plaintiff's correspondingly slight duty to look out for his own safety. We accordingly held that "any slight fault by plaintiff in encountering or failing to avoid this extremely hazardous risk cannot reasonably be deemed to totally excuse defendant's *1239 callous disregard for the safety of others or to completely bar plaintiff's recovery of his damages." Id. at 981.
Likewise in the present case United had a significant duty to clean its heater of volatile hydrocarbons before selling it for reuse. Buckbee's duty to exercise care in handling the possibility of danger in a heater which he believed had been cleaned and knew had been cut with torches paled in comparison to United's duty to remedy the known dangers that it had in fact created. A victim's negligence cannot be both the foreseen risk which imposes the duty on the defendant and at the same time a defense to an action based on the defendant's breach of that duty. The rule of law which gave rise to the defendant's heavy duty was designed to protect the victim against the risk of his own slight improvidence, and recovery should not be absolutely barred for the injury caused by the risk that the rule of law was designed to prevent. Argus v. Scheppegrell, 472 So.2d 573 (La. 1985).
We conclude on this record that Buckbee was not contributorily negligent so that his recovery was barred as a matter of law. The court of appeal erred in its contrary determination, and plaintiffs are entitled to recover the damages caused by United's negligence. Inasmuch as neither lower court addressed the issue of damages, we remand the case to the court of appeal to fix the damages on the basis of the record.

Third Party Demand
United filed a third party demand against Watt, but plaintiffs settled with Watt prior to trial. On this record both United and Watt had the duty to clean the heater, and neither did so properly. Each should therefore be liable, as between the two tortfeasors, for one-half of plaintiffs' damages. Inasmuch as plaintiffs' settlement with Watt deprived United of its right to receive contribution from Watt, United is entitled to a reduction of one-half of the damages fixed by the court of appeal. Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3rd Cir.1964).[9]

Decree
Accordingly, the judgments of the lower courts are reversed, and judgment is rendered in favor of plaintiffs. The case is remanded to the court of appeal to fix the amount of damages on the basis of the record in an expeditious manner and to enter a judgment in favor of plaintiffs and against United Gas Pipeline Company, Inc., in the amount of one-half of the damages.

ORDER
THE ABOVE AND FOREGOING motion considered;
IT IS ORDERED that the Application for Rehearing and/or Clarification of LOUISIANA INSURANCE GUARANTY ASSOCIATION ("LIGA") be and is hereby permitted to be withdrawn and all issues regarding the intervention for worker's compensation benefits be remanded to the Third Circuit Court of Appeal.
NOTES
[*] Judge J. Louis Watkins, Jr. of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Ad Hoc in place of Associate Justice Jack C. Watson, who was recused.
[1] This evidence regarding Buckbee's seeking and obtaining permission from his supervisor was objected to by United and excluded by the trial judge, who allowed a proffer of the evidence.
[2] Examination of the residual oil in the tube revealed that it was the same type of oil used by United in its former operations.
[3] United answered the appeal, urging that the jury erred in finding United negligent. However, United did not appeal the $750,000 judgment in favor of Vincent and apparently satisfied or compromised the judgment.
[4] According to the proffer, Vincent would have testified that on the scaffold Buckbee stated he was going to the office to obtain permission to apply heat and that upon his return Buckbee stated he had obtained permission.
[5] The court noted that the supervisors had originally warned Buckbee not to use heat until the first plug was removed, but had not issued the same warning to Vincent. Moreover, Buckbee was an experienced welder who knew or should have known that heat should not be applied to remove the first plug, while Vincent had minimal experience as a welder before being pressed into service to assist Buckbee on this job.
[6] The court pointed to a provision in the sales contract between United and the used equipment dealer which required the buyer to clean all vessels that had been used for processing highly volatile hydrocarbons, with the monitoring of a United inspector. However, the court did not state what bearing this provision had on the issues of negligence and contributory negligence.
[7] In our review of the jury's determination of United's fault, plaintiffs are entitled to the benefit of the manifest error rule, because the erroneously excluded evidence was only relevant to the contributory negligence issue and had no effect on the jury's determination that United was negligent. Picou v. Ferrara, 483 So.2d 915 (La.1986).
[8] The breach element of the duty-risk analysis is as self-evident as the cause-in-fact element. The residual oil in the heater after the explosion was the same type used by United when the heater was last used. If United had the duty to remove the oil, the duty was clearly breached.
[9] The reduction under a comparative fault system depends on the amount of the proportionate fault of the released tortfeasor. See Dill v. State of Louisiana, Department of Transportation and Development, 545 So.2d 994 (La. 1989).